# Eatman *v.* The State.

## *Indictment for Murder.*

1. *Homicide; insufficiency of indictment.*—An indictment which charges that the defendant "unlawfully and with malice aforethought killed" the deceased "by striking her with some weapon to the grand jury unknown, or by some means to the grand jury unknown," etc., is not subject to demurrer upon the ground that the means by which the offense was committed are not sufficiently described.

2. *Witness; competency of child.*—Where a child nine years old, on her *voir dire* examination, after testifying that she did not know her age, was never at school, could not read and had been to church but once, further testified that God made her, and that she knew it was wrong to tell a story, that she would be punished by being put in jail for it and would go to the "bad place" when she died, she is shown to have sufficient intelligence and sufficient conception of the sanctity of an oath to render her competent as a witness.

3. *Trial and its incidents; adjournment of court to obtain attendance of witness.*—Where, in the trial of a criminal case, the defendant as a witness testifies to facts which had never been disclosed before, and of which the State's attorney had no

[Eatman v. The State.]

notice, the court does not abuse the discretion invested in
it, by granting a motion of the State to adjourn the trial from
the afternoon when the testimony of the defendant was given,
until the next morning, in order for the State to procure the
attendance of a witness to rebut such testimony; nor is it an
abuse of discretion on the part of the court to refuse to delay
the case at the instance of the defendant, after such witness
for the State had appeared and been examined, in order that
the defendant could procure the attendance of witnesses to
impeach him.

4.  *Trial and its incidents; argument of counsel to jury.*—In the
prosecution of a criminal case, the solicitor is within the
bounds of proper discussion of the evidence, if he states to
the jury as a fact, the motive or reason for the defendant kill-
ing the deceased, as was testified to by the defendant himself.

5.  *Homicide; admissibility of evidence.*—On a trial under an in-
dictment for murder, it is competent for the State, upon the
cross-examination of the defendant, to ask him as to his mo-
tives or reasons for striking the deceased.

6.  *Homicide; charge of court to jury.*—On the trial of a criminal
case, where there is evidence from which the jury could find
that the defendant struck the deceased with a formed design
to take her life, a charge is erroneous and properly refused
which instructs the jury "that if you believe the evidence you
can not find the defendant guilty of murder in the first de-
gree."

7.  *Argumentative charges* are properly refused.

APPEAL from the Circuit Court of Lamar.

Tried before the Hon. S. H. SPROTT.

The appellant in this case, Jack Eatman, was indicted
and tried for the murder of Kitty Eatman, was con-
victed of murder in the first degree and sentenced to the
penitentiary for life.

The indictment contains two counts. The first count
charged that the killing was by striking the deceased
with a hammer or by striking her head against a tree.

The second count was in words and figures as follows:
"The grand jury of said county further charge that be-
fore the finding of this indictment, Jack Eatman, un-
lawfully and with malice aforethought, killed Kitty
Eatman by striking her with some weapon to the grand

jury unknown, or by some means to the grand jury unknown, against the peace and dignity of the State of Alabama."

*The defendant demurred to the second count of the indictment upon the ground that the means by which the offense was committed are not sufficiently described, as required by law. This demurrer was overruled.

Upon the State introducing Beatrice Eatman as a witness, the defendant objected to her testifying because of her youth and because she did not understand the obligations of an oath. Upon the *voir dire* examination of said witness, she testified that she did not know how old she was, that she could not read, had never been to school and had been to church but one time in her life. She further testified that God made her; that she knew it was wrong to tell a story; that she would be punished if she told a story, would be put in jail and would go to the "bad place" when she died. It was further shown that she was nine years old. The court ruled that the witness was competent and permitted her to be examined. To this ruling the defendant duly excepted. This witness testified that she was the child of the defendant and Kittie Eatman, the deceased; that she was present when her mother was killed by the defendant; that the defendant and her mother had a fuss the morning of the killing and the defendant jerked her mother off of the porch of the house, threw her against the ground, knocked her head against a plum tree, choked her and then hit her in the head several times with a hammer, and then ran off; that her mother was doing nothing to her father at the time the latter assaulted her, and never struck or tried to strike him. There was other evidence introduced tending to connect the defendant with the commission of the homicide.

The defendant as a witness in his own behalf testifie l that on the morning of the killing he asked his wife, the deceased, to go to the field and work with him; that she declined to go, giving as an excuse that there was too much dew on the ground; that after leaving the house his suspicions were aroused, and he returned near his house in a circuitous way, and when he got within 150 or

200 yards of the house sat down in a clump of bushes; that after being there a few moments, he saw his wife coming in the direction of where he was sitting; that when she got within about thirty feet of him, she saw him and cried out in an angry and excited manner and just as she did this, a man by the name of Dan Gentry jumped up from some bushes about thirty feet distant from him and ran away; that thereupon his wife commenced to quarrel with him and they went back to the house; that his wife continued to quarrel and made threats and he left the house; that as he walked from the house he saw his wife pick up a hammer and she started towards him with the hammer and hit him with it; whereupon he caught her, took the hammer from her, threw her down and hit her several blows.

On the cross-examination of the defendant as a witness, he testified that he had never had any reason to suspect his wife before that morning, and never had. The solicitor for the State asked the defendant, upon his cross-examination: "If he didn't strike deceased because she tried to strike him, and if this was not the only reason he struck the deceased?" The defendant objected to this question, because it called for a motive and was inadmissible. The court overruled the objection and the defendant duly excepted. The defendant testified that that was the reason he struck the deceased.

About 3 o'clock on the afternoon during the trial of this cause, the solicitor for the State asked the court to adjourn the case until the next morning, in order to give him time to send for Dan Gentry, who lived several miles distant, and stated that he had never heard Gentry's name connected with the case until the defendant testified, and that he could get Gentry by the next morning. Against the objection and exception of the defendant the court adjourned the case until the next morning.

The said Gentry was introduced as a witness, against the objection and exception of the defendant, and testified that he was no nearer the defendant's house than three miles on the morning of the killing. The defendant moved a continuance of the case on the ground of

surprise and a lack of opportunity to meet and rebut the testimony of the witness Gentry. The court overruled the motion, and to this ruling the defendant duly excepted.

During his argument to the jury, the solicitor for the State stated "that the defendant's own testimony showed that he struck the deceased for the single and only reason that she was trying to strike him, and that as he understood the evidence and the law, he could not invoke the doctrine of self-defense," and then went on to argue the doctrine of retreat. The defendant objected to this statement on the part of the solicitor, upon the ground that it denied to the defendant the right to have the jury determine whether he acted by tumult of passion on seeing his wife in a compromising position. The court overruled the objection, and the defendant duly excepted.

The bill of exceptions recites that there were two written charges given at the request of the State, but they are not set out in the bill of exceptions.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (3.) "I charge you, gentlemen of the jury, that if you believe the evidence, you cannot find the defendant guilty of murder in the first degree." (4.) "I charge you, gentlemen of the jury, that the words and conduct of another, under some circumstances may be of such an insulting and provoking character as to kindle sudden passion, and provoke immediate resentment to the taking of life, and if the deceased by insult, or provocation of such character as would reasonably be calculated to kindle passion and provoke sudden resentment, and if the jury believe from the evidence that such insult or provocation by Kitty Eatman had the effect to provoke sudden resentment, and that the killing was traceable solely to the influence of the passion by such insult and provocation, then the killing of Kitty Eatman would not be willful, malicious, deliberate and premeditated, and is not murder in the first degree."

W. A. YOUNG, for appellant.—The demurrer to the indictment should have been sustained.—Code, § 4906; *Rogers v. State*, 117 Ala. 194.

The proof shows that all the facts were known to the grand jury, and no conviction can be had on such an indictment.—*Winter v. State*, 90 Ala. 637; *Terry v. State*, 118 Ala. 79.

The child Beatrice Eatman was not shown to be a competent witness—*Carter v. State*, 63 Ala. 52.

The court exceeded its discretion in continuing the case, in order to give the State an opportunity to get the witness Gentry.—*White v. State*, 86 Ala. 69.

The portion of the argument of the solicitor to the jury which the defendant objected to, was not demurrable.—*Childress v. State*, 86 Ala. 77; *Hooks v. State*, 99 Ala. 169.


MASSEY WILSON, Attorney-General, for the State. The demurrer to the indictment was properly overruled. Code, § 4905; *Terry v. State*, 118 Ala. 79.

The *voir dire* examination of the witness Beatrice Eatman showed that she was competent to testify, and the court ruled correctly in so holding.—*Williams v. State*, 109 Ala. 64; *Grimes v. State*, 105 Ala. 86.

The questions asked the defendant on cross-examination were proper.—*Williams v. State*, 123 Ala. 39; *Hurst v. State*, 133 Ala. 96.

The action of the court in continuing the case from the afternoon on which it was being tried until the following morning, in permitting the witness Gentry to testify and in overruling defendant's motion for a continuance, was within the discretion of the court and not revisable.—*Cunningham v. State*, 117 Ala. 59.


McCLELLAN, C. J.—It is, of course, possible for a felonious homicide to be shown and the guilty agent identified before a grand jury by evidence which does not disclose whether or not a weapon was used, nor the means employed in the perpetration of the act. Of course, too, in such a case, the grand jury could only charge the homicide and set forth in the indictment that

[Eatman v. The State.]

it was accomplished by means unknown to them. Such indictment would sufficiently charge the offense. Such is the indictment here in that one of its alternatives which alone is attacked by the demurrer. The demurrer was properly overruled. Had the evidence on the trial shown that the grand jury knew the means employed by the defendant in the homicide, a different question might arise.—*Terry v. State,* 118 Ala. 79, 87.

It appeared on her *voir dire* examination that the child, Beatrice Eatman, had sufficient intelligence and sufficient conception of the sanctity of an oath to testify.

The court's action in adjourning the trial over a part of the afternoon and the night to give the prosecution an opportunity to procure the attendance of a witness to rebut certain testimony of the defendant himself, the occasion of such rebutting testimony being disclosed only and for the first time by the defendant's testimony, and also its action in refusing to delay the case after this witness had appeared and been examined in order that the defendant should have opportunity to procure the attendance of witnesses to impeach him, involved no abuse of discretion, and will not be revised.

What the solicitor stated to the jury as a fact in evidence as to the motive or reason of the defendant for killing his wife, was precisely the fact as testified to by the defendant himself. Surely such a statement by counsel is well within the bounds of proper discussion of the evidence.

It was competent for the prosecution to ask the defendant on cross-examination as to his motives or reasons for striking his wife.—*Williams v. State,* 123 Ala. 29; *Hurst v. State,* 133 Ala. 96.

The charges given for the State are not set out in the bill of exceptions; and we, therefore, cannot review the giving of them.

There was evidence before the jury upon which it was open to them to find that the defendant struck with the formed design to take the life of his wife. Charge 3 requested by the defendant was, therefore, properly refused.

Charge 4 refused to defendant is argumentative.

Affirmed.