280 So.2d 186

**Robert Raymond ALBRIGHT**

**v.**

**STATE.**

**1 Div. 338.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied May 29, 1973.

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

On December 9, 1971, the Grand Jury of Mobile County returned an indictment charging appellant with murder in the first degree. On December 29 the trial court appointed counsel to represent and defend him and upon being arraigned, appellant interposed a not guilty plea with leave to file special pleas within thirty days. Counsel for appellant filed a demurrer to the indictment and also a motion to quash the indictment on identical grounds. The court overruled the demurrer and denied the motion to quash.

On April 25, 1972, the trial began with a struck jury under appellant's not guilty plea. After the state had put on three (3) witnesses, appellant with his counsel made known to the court that he desired to change his not guilty plea and plead guilty to the indictment. After ascertaining that appellant fully understood all of his constitutional rights under the Constitution and laws of Alabama, the Constitution of the United States, and specifically his rights spelled out in *Boykin,* and that his decision to plead guilty was intelligently, understandingly and voluntarily made the court accepted the guilty plea, and, without the intervention of the jury trying the case, sentenced appellant to imprisonment in the penitentiary for life.

Under Headrick v. State, 46 Ala. App. 202, 239 So.2d 572, we are compelled to reverse. Cf. Spencer v. State, 48 Ala. App. 646, 266 So.2d 902. After jeopardy attaches and a criminal trial is underway, there is no longer a field of operation for Title 15, Section 277, Code of Alabama 1940. This case should have been submit-

ted to the jury under instructions from the court as to the sentence that could legally be imposed.

There is a much more serious problem presented by the record that has gone unnoticed by appellant and the state and that is the sufficiency of the indictment when tested by apt demurrer even in face of a guilty plea.

This is a five count indictment and, omitting the formal parts, are as follows:

"The GRAND JURY of said County charge, that, before the finding of this indictment ROBERT RAYMOND ALBRIGHT whose name is to the Grand Jury otherwise unknown than as stated, unlawfully, and with malice aforethought, killed Edward Chandler Williams, an infant child by exposing him to the cold and weather, against the peace and dignity of the State of Alabama.

"Ct I  The Grand Jury of said County further charge, that, before the finding of this indictment ROBERT RAYMOND ALBRIGHT, whose name is to the Grand Jury otherwise unknown than as stated, unlawfully and with malice aforethought, killed Edward Chandler Williams, by want of care and attention, and by abandoning him, and refusing to care for and protect him, against the peace and dignity of the State of Alabama.

"Ct II  The Grand Jury of said County further charge, that, before the finding of this indictment ROBERT RAYMOND ALBRIGHT, whose name is to the Grand Jury otherwise unknown than as stated, unlawfully and with malice aforethought, killed Edward Chandler Williams, an infant child, by abandoning him on the side of a public road in the nighttime wilfully (sic) permitting him to be exposed to the elements, against the peace and dignity of the State of Alabama.

"Ct IV  The Grand Jury of said County further charge, that, before the finding of this indictment ROBERT RAYMOND ALBRIGHT, whose name is to the Grand Jury otherwise unknown than as stated, unlawfully, and with malice aforethought, killed Edward Chandler Williams, an infant child, by abandoning said infant on the side of a public road, refusing to care for him and refusing to protect him, and wilfully (sic) permitting him to be exposed to the elements, against the peace and dignity of the State of Alabama.

"Ct V  The Grand Jury of said County further charge, that, before the finding of this indictment ROBERT RAYMOND ALBRIGHT, whose name is to the Grand Jury otherwise unknown than as stated, unlawfully, and with malice aforethought, killed an infant child, whose name is to the Grand Jury otherwise unknown, by abandoning said infant on the side of a public road, refusing to care for him and refusing to protect him, and wilfully (sic) permitting him to be exposed to the elements, against the peace and dignity of the State of Alabama."

■  At common law it was necessary to set forth in an indictment for murder the *means* by which an offense was committed. Hornsby v. State, 94 Ala. 55, 10 So. 522, 525; Cozart v. State, 42 Ala.App. 535, 171 So.2d 77. The requirements of the common law as to averments of the means by which a homicide is committed has been retained under our statutory procedure. Title 15, § 241 and § 242, Code of Alabama 1940. Wilson v. State, 243 Ala. 1, 8 So.2d 422.

■  While the means with which a homicide is committed is not a constituent element of the offense, the omission to aver the means employed, though a defect of substance, and not one of form, is such a defect as must be taken advantage of by demurrer. Gaines v. State, 146 Ala. 16, 41

So. 865; Huckabee v. State, 159 Ala. 45, 48 So. 796. Where the means is unknown it is proper to allege in the indictment "by some means to the grand jury unknown". Eatman v. State, 139 Ala. 67, 36 So. 16; McDonald v. State, 241 Ala. 172, 1 So.2d 658.

Title 15, § 259, Code of Alabama 1940, form 79, is prescribed for murder in the first degree:

"A. B. unlawfully, and with malice aforethought, killed C. D., by shooting him with a gun or pistol, etc. *(or by striking him with an iron weight, or by throwing him from the top of a house, or by pushing him into the river, whereby he was drowned, etc., as the case may be)."* (emphasis added)

It is crystal clear that this form in each instance states the *quo modo* of the use of the instrument causing death.

Leaving out the means of homicide is a demurrable defect. Cozart v. State supra; Langham v. State, 243 Ala. 564, 11 So.2d 131.

In neither count of this indictment is the *quo modo* or the means of causing death of the infant child set forth. The means by which the homicide was perpetrated is inferential and speculative. The whole matter covering the cause of death could have been obviated by an averment that appellant unlawfully and with malice aforethought killed the named infant by some "means were to the grand jury unknown". McDonald v. State, 241 Ala. 172, 1 So.2d 658; Bradfield v. State, 258 Ala. 638, 64 So.2d 890.

The law of homicide growing out of the abandonment of an infant child is stated in Pallis v. State, 123 Ala. 12, 26 So. 339. The facts in *Pallis,* supra, tended to show that the defendant placed her new-born baby on the side of a public road in a sand bed, without any clothing or wrapping of any kind upon it, and left it there covered with straw and leaves. The next day the child was found in an almost dying condition, and was carried to a physician, who, by stimulants, revived it and restored its circulation.

The trial court in its general charge to the jury instructed it as follows:

"If you believe from the evidence, beyond a reasonable doubt, that the defendant, in Conecuh County in this State, after giving birth to the child in question, abandoned it in the public road or street, in the night, without clothes or covering, exposed to the elements and such other dangers as might beset it, and that she intended thereby to accomplish the death of the child, she would be guilty of an assault with intent to murder."

The Supreme Court said:

"It seems to be well settled, that where a parent having charge of an infant of tender years, abandons and exposes it to the inclemency of the weather, such parent is guilty of an assault. If physical detriment ensue from such exposure, it is a battery on the child. Russ. Crimes, p. 1021, § 1022; 2 Bish.New Cr.Law, §§ 29, 33(2), 72(3), 660(1).

" 'If the exposure or neglect of an infant or other dependent person, resulting in death is an act of mere carelessness, wherein danger to life does not clearly appear, the homicide is only manslaughter; whereas, if the exposure or neglect is of a dangerous kind, it is murder. For example, if from an infant of tender years the person under obligation to provide for it willfully withholds needful food or any other needful thing, though not with intent to kill, and by reason thereof the child dies, he commits murder.' 2 Bish.New Cr.Law, § 686.

"The charge of the court was in consonance with the foregoing principles, and in its postulates was well within the evidence in the cause."

■ The several counts of this indictment embodies charges of "commission", and "omission". The law of neglect or omission as the same relates to infant children comes to us from the ancient common law being grounded upon a status relationship of paternal support, care, protection and nurture. An obligation imposed by law carries with it the corresponding legal duty to meet and discharge the responsibility. Willfully allowing one to be exposed to conditions which will probably result in death, where there is a duty to protect such person, constitutes murder. To create criminal responsibility for death resulting from exposure, there must be neglect to perform a legal or contractual duty which accused was bound to perform. State v. Berry, 36 N.M. 318, 14 P.2d 434.

The rule is stated in *29 C.J.* on pages 1096 and 1097 as follows:

"The omission or neglect to perform a duty resulting in death may constitute murder where the omission was willful and there was deliberate intent to cause death, or where the omission must necessarily lead to death, so willfully allowing one to be exposed to conditions which will probably result in death, *where there is a duty to protect such person,* constitutes murder." (emphasis added)

Mr. Bishop, in discussing the subject, says:

"If the act is one of negligence not clearly showing danger of life, yet, if death follows, the offense is only manslaughter; whereas, if the exposure or neglect is of a dangerous kind, it is murder. Ordinarily, if a husband should withhold necessaries from his wife and she dies, it will be only manslaughter, since this act is not so immediately dangerous to life as the other. Whether

death caused by neglect is murder or manslaughter is made to depend on the nature and character of the neglect."

■ One who intentionally withholds food and liquids from a baby, so that it dies, or willfully exposes a helpless infant to freezing cold weather whereby it freezes to death, is guilty at common law of murder, and if the omission arises from negligence only it is a case of manslaughter.

In Regina v. Hughes, 7 Cox C.C. 301, page 302, Lord Campbell, C. J., said,

"But it has never been doubted that if death is the directed consequence of the malicious omission of the performance of a duty (as of a mother to nourish her infant child) this is a case of murder. If the omission was not malicious and arose from negligence only, it is a case of manslaughter."

This statement is supported by numerous authorities in England and the United States, Regina v. Bubb, 4 Cox C.C. 457; Regina v. Conde, 10 Cox C.C. 547, 549; Regina v. Handley, 13 Cox C.C. 79; Rex C. Gibbins, 13 Cr.App.Rep. 134; Lewis v. State, 72 Ga. 164, 53 Am.Rep. 835; State v. Barnes, 141 Tenn. 469, 212 S.W. 100; Gibson v. Commonwealth, 106 Ky. 360, 50 S.W. 532 90 Am.St.Rep. 230; Pallis v. State, supra; Bishop on Criminal Law, 9th Ed. Sec. 686; Wharton's Criminal Law, 12th Ed. Sec. 485.

■ No count in this indictment attempts to set forth the relationship between appellant and the deceased so as to denote the legal duty enjoined by law on the part of appellant to protect the deceased from death or great bodily harm. The lower court erred in overruling the demurrer to the indictment and each count thereof.

■ As hereinabove noted, appellant, during trial, changed his not guilty plea and plead guilty to the indictment.

Generally, a plea of guilty is more than a voluntary confession made in open court; it also serves as a stipulation that no proof by the prosecution need be advanced, except as expressly provided by statute, and it supplies both evidence and verdict, thereby ending the controversy. Title 15, Section 277, Code of Alabama 1940; Woodard v. State, 42 Ala.App. 552, 171 So.2d 462. This procedure does not, however, rob appellant of the right to take advantage of error of defects apparent of record.

In Harris v. State, 19 Ala.App. 484, 98 So. 316, it is said:

"The plea of guilty when accepted and entered by the court is a conviction of the highest order, authorizing the imposition of sentence fixed by law the same as on the verdict of a jury, *after trial on a charge sufficiently charged in the indictment.* The plea, however, is only an admission of record of the truth of whatever is sufficiently charged in the indictment, and does not prevent the defendant from taking advantage of error of defects apparent of record. The statute, Code 1907, § 2892, which provides that a confession of judgment is in law a release of errors, does not apply in a criminal case. Burke v. State, 74 Ala. 399; State v. Kelley, 206 Mo. 685, 105 S.W. 606, 12 Ann.Cas. 681; Grossman v. Oakland, 30 Or. 478, 41 P. 5, 36 L.R.A. 593 60 Am.St.Rep. 832. We may, therefore, on the record before us, pass to a consideration of the question as to whether or not the indictment as drawn will support a conviction and sentence for forgery, even conceding that the defendant admitted by his plea the commission of the act charged." (emphasis added)

For the errors above pointed out, let the cause be reversed and remanded for another trial. Appellant shall remain in custody until discharged by law.

Reversed and remanded.

All the Judges concur.