278 So.2d 734

**David Larry NELSON**

**v.**

**STATE.**

**6 Div. 418.**

Court of Criminal Appeals of Alabama.

April 17, 1973.

Motion Denied May 29, 1973.

Swatek & Bell, Birmingham, for appellant.

William J. Baxley, Atty. Gen. and George M. Van Tassel, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

The judgment entry recites that appellant was arraigned upon an indictment charging murder in the first degree and was convicted of murder in the second degree and punishment fixed at imprisonment in the penitentiary for a term of twenty-five (25) years. Appellant is now at servitude.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that, before the finding of this indictment, DAVID LARRY NELSON unlawfully, and with malice aforethought, *killed Oliver King against the peace and dignity of the State of Alabama.*" (Emphasis added.)

From the record it does not appear that the sufficiency of this indictment was questioned by demurrer, motion to exclude the state's evidence, nor a request for the affirmative charge. It is not noticed in briefs filed here by either party. Is the omission of any attempt to set out the *quo modo* in the above indictment such a defect in substance that it will not support the judgment of conviction? We answer in the affirmative and reverse the case.

At common law it was necessary to set forth in an indictment for murder the *means* by which an offense was committed. Hornsby v. State, 94 Ala. 55, 10 So. 522; Cozart v. State, 42 Ala.App. 535, 171 So.2d 77. The requirements of the common law as to averments of the means by which a homicide is committed has been retained under our statutory scheme and procedure. Title 15, Sections 241 and 242, Code of Alabama 1940. Wilson v. State, 243 Ala. 1, 8 So.2d 422.

In Albright v. State, 50 Ala.App. 480, 280 So.2d 186, 1973, this Court said:

"While the means with which a homicide is committed is not a constituent element of the offense, the omission to aver the means employed, though a defect of substance, and not one of form, is such a defect as must be taken advantage of by demurrer. Gaines v. State, 146 Ala. 16, 41 So. 865; Huckabee v. State, 159 Ala. 45, 48 So. 796. Where the means is unknown it is proper to allege in the indictment 'by some means to the grand jury unknown'. Eatman v. State, 139 Ala. 67, 36 So. 16; McDonald v. State, 241 Ala. 172, 1 So.2d 658."

Title 15, Section 259, Code of Alabama 1940, form 79, is prescribed for murder in the first degree:

"A.B. unlawfully, and with malice aforethought, killed C.D., by shooting him with a gun or pistol, etc. (*or by striking him with an iron weight, or by throwing him from the top of a house, or by pushing him into the river, whereby he was drowned, etc., as the case may be*)." (Emphasis added.)

The general statute relating to indictments, Title 15, Section 232, Code of Alabama 1940, says:

"The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are the words 'force of arms' or 'contrary to the form of the statute' necessary."

In Gayden v. State, 38 Ala.App. 39, 80 So.2d 495, Presiding Judge Carr, speaking for the Court, said:

"The constitutional right of an accused to demand the nature and cause of his accusation is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense.

"An indictment should be sufficiently specific in its averments in four prime aspects to afford this guaranty: (1) To identify the accusation or charge lest the accused should be tried for an offense different from that intended by the grand jury. (2) To enable the defendant to prepare for his defense. (3) That the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy for the same offense. (4) To enable the court, after conviction to pronounce judgment on the record.

"This protection which the law furnishes to one charged with crime has not been relaxed or relented by our courts throughout its history.

\* \* \* \* \* \*

"The law does not contemplate that a person charged with crime should be brought to trial and stand before the courts of our land unaware or in doubt of the nature and character of the accusation against him."

This case went to the Supreme Court by way of certiorari, Gayden v. State, 262 Ala. 468, 80 So.2d 501. There, Mr. Justice Simpson, speaking for the majority, said:

"Indictments must always conform to the mandates of our organic law. The emphasis in our cases 'that in all criminal prosecutions, the accused has the right \* \* \* to demand the nature and cause of the accusation' now § 6 of the Constitution of 1901—is not meaningless tautology, but one of the cornerstones of our Bill of Rights.

\* \* \* \* \* \*

"We are further restrained in this case by the requirements of the Fourteenth Amendment to the Constitution of the United States. The following utterances

by our Federal courts are pertinent: 'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. 'The petitioner charged that he had been denied any real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process * * *.' Smith v. O'Grady, Warden, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859. 'An intelligent and full understanding by the accused of the charge against him is a first requirement of due process.' Bergen v. United States, 8 Cir., 145 F.2d 181, 187.

"Regardless of some ill-considered, loose expressions in some of the cases, the law is and always has been that it is not enough to charge against a defendant a mere legal conclusion as justly inferential from facts not set out in the indictment. United States v. Almeida, 24 Fed.Cas. pages 775, 776, No. 14,433.

" 'In order to properly inform the accused of the "nature and cause of the accusation", within the meaning of the constitution and of the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, *but the particular act or acts touching which he must be prepared with his proof; and when his liberty, and per-*

*haps his life, are at stake, he is not to be left so scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of being surprised by proofs on the part of the prosecution of an entirely different act or series of acts,* at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense.' (Italics supplied.) United States v. Potter, 1 Cir., 56 F. 83, 89.

* * * * * *

" * * * As example, if the indictment had charged that the defendant 'did commit murder,' he would be informed of the crime charged against him, but no student of the law with the slightest conception of constitutional liberty would suggest that he could be put to trial on such an indictment against his will. * * *"

The indictment in this case charges that appellant "did commit murder", nothing more, nothing less. To this extent appellant is apprised of the charge against him but he could not know the contentions of the state as to *how* he committed murder.

There is a line of cases holding that where an indictment fails to state any offense such defect must be noticed despite the absence of any attack on it in the court below. Brown v. State, 32 Ala.App. 246, 24 So.2d 450; Raisler v. State, 55 Ala. 64; Emmonds v. State, 87 Ala. 12, 6 So. 54; Gaines v. State, 146 Ala. 16, 41 So. 865; Mehaffey v. State, 16 Ala.App. 99, 75 So. 647; Jetton v. State, 29 Ala.App. 134, 195 So. 283.

There is also another line of cases holding that where deficiency in an indictment was not challenged by demurrer or questioned by appropriate plea in the lower court the indictment will not be reviewed on appeal. Stehl v. State, 283 Ala. 22, 214 So.2d 299; Ray v. State, 25 Ala.App. 262, 145 So. 325; Ex parte State (State v. Col-

lins), 200 Ala. 503, 76 So. 445; Hornsby v. State, 94 Ala. 55, 10 So. 522.

 At first blush it would seem that the law on this subject is in a sad state of flux. Be that as it may, these are rules of state practice and procedure. Otherwise stated, these are judge-made decisions. When rules of state practice and procedure conflict with the due process clause of the Fourteenth Amendment, they must yield to the commandments of that Amendment. In the words of the Supreme Court of the United States, "Conviction upon a charge not made would be sheer denial of due process." DeJonge v. State of Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278.

In Cole v. State of Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644, the Supreme Court said:

"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. * * *"

See Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654.

"An intelligent and full understanding by the accused of the charge against him is a first requirement of due process. * * *" Bergen v. United States, 8 Cir., 145 F.2d 181; Ammons v. King, 8 Cir., 133 F.2d 270; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859.

 The conviction in this case cannot stand as it offends the first requirement of constitutional due process. The failure to charge an offense and the obvious harm to the defendant resulting therefrom, is the kind of defect involved in due process of law and it cannot be waived.

This cause is reversed and remanded for a new trial. Appellant will remain in custody until discharged by law.

Reversed and remanded.

CATES, P. J., and TYSON and De-CARLO, JJ., concur.

ALMON, J., dissents.

ALMON, Judge (dissenting).

I do not consider this indictment void. It is merely voidable upon demurrer. Our Supreme Court has decided this precise question in Gaines v. State, 146 Ala. 16, 41 So. 865. Therefore, I most respectfully dissent.

On Motion for Withdrawal of Opinion

HARRIS, Judge.

 This cause was reversed and remanded for a new trial on April 17, 1973. The state did not file an application for rehearing but on May 1, 1973, filed a "Motion For Withdrawal of Opinion, To Set Aside The Judgment of Reversal, To Restore The Cause To The Docket, And To Issue A Writ of Certiorari", specifically as follows:

"Comes now the Respondent (sic) in the above styled cause, by and through the Attorney General of Alabama, and respectfully prays this Honorable Court to withdraw the opinion rendered by this Court, to set aside the judgment of reversal, to restore the cause to the docket, and to issue a writ of certiorari directing the Clerk of the Circuit Court of the Tenth Judicial Circuit, the Honorable Julian Swift, to send to this Honorable Court a true and correct copy of the indictment in said cause, showing particularly whether or not said indictment shows the means by which the alleged crime was committed."

In a Memorandum Brief filed in support of the motion that the opinion of this Court in *Nelson's* case be withdrawn, it is stated that an error was made in typing the record of the trial. "This error involved the omission of one line in the indictment." Further, "the Attorney General's office has determined that the original indictment was legally sufficient and that

the only insufficiency is due to a typographical or clerical error."

Quoting further from the state's memorandum:

"The Respondent (Appellee) is fully aware that due process requires that the accused have an intelligent and full understanding of the charge against him. The Respondent (Appellee) is also aware that the indictment, as it appears in the record, is deficient, in that it does not specify the means by which the alleged crime was committed. However, Respondent (Appellee) contends that the actual indictment does point out with sufficient specificity the means by which the alleged crime was committed, to-wit, '. . . by beating him with his fists or by means otherwise unknown to the Grand Jury . . .'

"Thus, it is the Respondent's (Appellee's) contention that the indictment was sufficient and that its apparent insufficiency is due merely to a clerical error. The issuance of a Writ of Certiorari by this Honorable Court will operate to bring before the Court a true and correct copy of the indictment. If the indictment does, in fact, show that the *quo modo* was sufficiently set out, there can be no question that the Petitioner (Appellant) was afforded due process of the law.

"Respondent (Appellee) is aware that there is case law which holds that a Petition For Certiorari which comes after an opinion has been rendered is too late. However, Respondent (Appellee) would contend that, in the instant case, a refusal to issue the writ would operate as a miscarriage of justice. Should a mere clerical error which could be easily corrected carry such force as to require a new trial where the rest of the record is without blemish? The Respondent (Appellee) earnestly contends that it should not. If an incorrect record seems to show that an accused's rights have been violated when, in fact, a corrected record would show that they had not,

should a new trial result? The respondent (Appellee) would say 'No.' "

To respond favorably to the state's motion, we would be compelled to overrule Huddleston v. State, 37 Ala.App. 57, 64 So.2d 90, and Sashner v. State, 46 Ala. App. 407, 243 So.2d 390. This we are not willing to do.

On December 15, 1972, the clerk certified that the record filed by appellant on December 18, 1972, "contains a full, true, correct and complete transcript of the proceedings", etc. Appellant's brief was filed on February 23, 1972. The state's original brief was filed on February 21, 1972, noting that appellant had not filed a brief and stating that a supplemental brief may be filed. The record was submitted on briefs on March 5, 1973. The state filed a supplemental brief on March 9, 1973.

Opinion extended. Petition for certiorari denied.

CATES, P. J., and TYSON and DeCARLO, JJ., concur.

ALMON, J., concurs in denial of petition but adheres to his dissent on original deliverance.