BOOKOUT, Judge.
Murder in the second degree; sentence: 25 years imprisonment.
On October 9,1976, at approximately 1:00 A.M., Randolph Scott, while driving north out of Huntsville, Madison County, Alabama, observed appellant in a white Chevrolet in front of him. Appellant’s vehicle was also traveling north on a four lane divided highway with a grass median. Scott observed appellant’s vehicle run off the right hand side of the highway, and then a few feet later observed it run off into the grass median dividing the highway. After traveling further, Scott saw appellant traveling north in the south bound side of the highway at a speed of approximately 65 m. p. h. Further down the highway Scott again saw the appellant’s Chevrolet after it had collided with another vehicle. Scott, however, did not see the actual collision. He walked to the Chevrolet, and seeing no one, approached the other vehicle. He observed a girl, identified later as Vickie Lynn Schmidt, caught by the window on the driver’s side of her automobile. She appeared to be deceased. He returned to the Chevrolet and saw appellant lying in the seat of the Chevrolet.
*732 Trooper Jimmy Smith testified he came upon the accident shortly after it happened. The victim’s automobile was in the south bound lane, and appellant’s automobile was partly in the south bound lane and partly in the median. He also stated Ms. Schmidt appeared to be deceased, with multiple lacerations, abrasions, and possibly a broken neck. Trooper Smith diagramed his analysis of the accident and indicated the victim’s automobile was traveling south at the time of the collision while appellant’s vehicle was traveling north.
A carbon copy of a blood alcohol test consent form signed by appellant was introduced as well as the test results. The results indicated appellant’s blood contained 0.26 percent ethyl alcohol at the time of the test (two hours and forty-five minutes, after the collision) and 0.32 percent alcohol at the time of the collision. The toxicologist indicated these levels would seriously impair any skill necessary for driving an automobile.
Dr. Forrest Butler testified he examined the victim at the Huntsville Hospital emergency room. He stated Ms. Schmidt’s death was caused by the collision, the victim having suffered multiple abrasions and contusions, a fractured mandible, and possible skull fractures.
Detective Yearick of the Huntsville Police Department stated he went to the scene of the collision around 1:30 A.M. There he found a Seagrams 7 whiskey bottle in a paper bag in appellant’s automobile which he turned over to Trooper Smith at the Huntsville hospital.
I
Appellant asserts the court below erred in failing to grant a mistrial pursuant to Title 15, § 305, Code of Alabama 1940, as recompiled 1958, because of certain remarks in the prosecutor’s closing argument alleged to be prejudicial comments on appellant’s failure to testify. The pertinent argument of the attorneys and ruling of the court appear in the record as follows:
“MR. MILLER: What I say, of course, is not evidence. I would not assume that I can tell you something that is not a fact, and I don’t try to assume the Judge’s duty in this case. He will tell you what the law is and what the presumptions are and it is for your determination as to the truth and validity of the facts that the State has presented from the stand. I submit to you that there is not one fiber of evidence to rebut murder in the first degree from Tommy Baxter.
“MR. BAXTER: Judge, now, we object and move for a mistrial on the grounds that’s a comment on the Defendant’s failure to take the stand.
“THE COURT: Ladies and gentlemen, disregard the Prosecuting Attorney’s last remark in regard to no evidence from Tommy Baxter in this case. Tommy Baxter is an attorney and he is not giving evidence in this case whatsoever. That is for you to disregard and not consider that remark whatsoever in your deliberations in arriving at a verdict in this case. “I deny your motion.
* * * * * *
“MR. SIMPSON: Defense counsel says that not one State witness told you how it happened out there. Well, that’s right. We don’t have a State’s witness that was standing in front of Edward’s Warehouse and watched the accident and took photographs. We didn’t have a TV camera out there trained on the road. I couldn’t tell you exactly what happened, that’s true. The only person alive today that knows what happened out there that night is sitting right there.
“MR. BAXTER: Judge, we object and move for a mistrial on the grounds that that’s a comment upon the Defendant’s failure to take the stand.
“MR. SIMPSON: It’s a comment in kind, Judge, on what he argued in his closing argument.
“THE COURT: I am going to instruct the jury though to disregard the last remark in regard to that. The statement made by the District Attorney in his argument is only his inferences from the evidence, but I want you to disregard the last remark, just what he said.
*733 “I will deny your motion.”
As to the first remark, we see little, if any, merit to appellant’s contention that this refers to appellant’s failure to testify. The remark is specifically directed toward Tommy Baxter, appellant’s trial counsel, and not toward appellant. Clearly the trial judge, who was in the best position to interpret the prosecutor’s remark, attached that meaning to the statement and instructed the jury accordingly and correctly to disregard the remark. Any possible indirect alternate meaning the remark may have carried was also eradicated by the court’s prompt instruction to the jury. Smith v. State, Ala.Cr.App., 342 So.2d 466 (1977); Tillis v. State, 292 Ala. 521, 296 So.2d 892 (1974). Where the trial judge immediately instructs the jury to disregard such remarks, there is a prima facie presumption against error. Robinson v. State, Ala.Cr.App., 352 So.2d 11 (1977), cert. denied, Ala., 352 So.2d 15 (1977); Williams v. State, 43 Ala.App. 343, 190 So.2d 556 (1966).
Additionally, we conclude that the only other rational significance the jury could have attached to the remark would have been that the statement pointed to the lack of contradiction of the State’s evidence. The defense called no witnesses during the trial and put forth no evidence. “Where the State’s evidence does stand un-contradicted, the prosecutor does have the right to point this out to the jury.” Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975); McCulloch v. State, Ala.Cr.App., 338 So.2d 187 (1976). The general rule is that such statements by the prosecutor to the effect that the State’s evidence stands un-contradicted are permissible and are not direct references to appellant’s failure to testify where the defendant is not the only person capable of contradicting the State’s proof. Smith, supra; Gissendaner v. State, Ala.Cr.App., 338 So.2d 1025 (1976), cert. denied, Ala., 338 So.2d 1028 (1976); Sellers v. State, 48 Ala.App. 178, 263 So.2d 156 (1972). Here appellant had available potential witnesses who arrived at the scene after the collision as well as medical personnel at the hospital, none of whom were called to testify for the defense. Considering the very indirect thrust of the remark, the uncontra-dicted evidence of the State’s case, the availability of other potential witnesses, and the trial court’s immediate instructions to the jury to disregard the remark, we find no reversible error.
The second remark appears to be an “argument in kind” to rebut remarks made by the appellant’s counsel as in Tillis, supra. As such, the remark cannot be considered to be a direct attempt by the prosecutor to point out appellant’s failure to testify. It is at most merely an incidental and indirect reference to that point by way of rebutting the defense attorney’s argument. Adair v. State, 51 Ala.App. 651, 288 So.2d 187 (1974). Such statements, not having direct reference to the appellant’s failure to testify, must be interpreted in light of what has preceded them in the case, the evidence against the appellant, and other circumstances in the trial tending to indicate whether the solicitor was aiming his remarks at appellant’s failure to testify. Williams, supra.
The appellant cites Lamberth v. State, 54 Ala.App. 233, 307 So.2d 43 (1975) as controlling. However, that case is distinguishable upon its facts. In Lamberth the prosecutor made a direct reference by name to appellant and his failure to “tell” the jury about the accident. Further, the prosecutor’s reference appears to have been intended as a direct reference to the accused’s failure to testify rather than having been made incidentally as “argument in kind” as in this case. Additionally, there was a delay in the court’s instructions to the jury to disregard the remark in Lamberth, whereas here the court’s instructions were immediate and addressed directly to the remark in question. Smith, supra.
We find no harmful error in the court’s refusal to grant a mistrial. There was no stressing by the trial judge of this remark. The argument was quite evidently made on the basis of what the prosecutor intended to be “argument in kind” and not as a direct reference to appellant’s failure to testify. And finally, the evidence of guilt is exceed *734 ingly strong with no evidence whatsoever presented to support acquittal. Beecher, supra; Adair, supra. See also: Williams, supra; Tillis, supra; Smith, supra.
II
Appellant next contends that under the instant indictment (drawn under the universal malice theory of first degree murder), second degree murder is not a lesser included offense. In the same vein, he asserts that neither the malice nor the intent requisite to convict for murder in the second degree was charged or proved against him under the indictment. Concomitantly, he argues that because the State failed to prove first degree murder, because the indictment fails to allege the elements of second degree murder, and because the evidence fails to prove the necessary elements of second degree murder, his motion for directed verdict was erroneously denied by the court below.
Appellant’s argument raises an interesting point of law, however, his contention is not supported by the Alabama case law by which we are bound. In Berness v. State, 38 Ala.App. 1, 83 So.2d 607, affirmed, 263 Ala. 641, 83 So.2d 613 (1963), the Court of Appeals, although reversing on another ground, held:
“It is well settled under our decisions that where the accused is himself the driver of an automobile and drives it in a manner greatly dangerous to the lives of others so as to evidence a depraved mind regardless of human life, he may be guilty of murder in the second degree if his antisocial acts result in death of another, and this though he had no preconceived purpose to deprive any particular human being of life. Under such circumstances his acts are unlawful and without legal excuse, and malice may be inferred therefrom. Reed v. State, 25 Ala.App. 18, 142 So. 441; Williams v. State, 30 Ala.App. 437, 7 So.2d 511; Hyde v. State, 230 Ala. 243, 160 So. 237.”
This statement was quoted with approval by the Court of Appeals in Wright v. State, 41 Ala.App. 684, 149 So.2d 835 (1963). As recently as 1978, the Supreme Court of Alabama held that evidence presented under a murder indictment virtually identical to the one under consideration here, with similar facts to the case sub judice, was sufficient for submission to the jury as to all lessor included offenses of murder to the exclusion of murder in the first degree. Langford v. State, Ala., 354 So.2d 313 (1978). See also: Reed v. State, 25 Ala.App. 18, 142 So. 441, cert. denied, 225 Ala. 219, 142 So. 442 (1932). As pointed out in Langford, evidence of homicide committed by intoxicated drivers has on numerous occasions sustained second degree murder convictions. We read Langford as holding that a second degree murder conviction under a first degree murder indictment, on facts similar to the instant case, is permissible. Commander v. State, Ala.Cr.App., [Ms. July 25, 1978],
III
Appellant contends the indictment was defective in that it failed to allege the quo modo of the crime. The indictment appears in the record in pertinent part as follows:
“The Grand Jury of said County charge, that before the finding of this indictment, James Robert Whitt, whose name is unknown to the Grand Jury other than as stated, unlawfully killed Vickie Lynn Schmidt, by perpetrating an act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life by, to-wit: operating a motor vehicle while under the influence of intoxicating liquors or narcotic drugs along a highway and while operating the said motor vehicle under the influence of intoxicating liquors or narcotic drugs did run the motor vehicle in which the said Vickie Lynn Schmidt was driving over, upon, into or against the motor vehicle in which the said Vickie Lynn Schmidt was driving and as a proximate cause thereof, unlawfully killed the said Vickie Lynn Schmidt, against the peace and dignity of the State of Alabama.” (Emphasis supplied.)
*735 We point out first that the indictment does not fail to allege an offense or the means by which the offense was perpetrated. It can be read, however, as erroneous in its designation of the vehicle driven by appellant which collided with the victim’s vehicle. Yet we deem it sufficient “to enable a person of common understanding to know what is intended.” Title 15, § 232, Code of Ala.1940 [now § 15-8-25, Code of Ala.1975],
A defect in an indictment which is not connected with a constituent element of the offense is not fatal to the indictment, and is not noticed by this court unless raised by demurrer in the trial court. Jeter v. State, Ala.Cr.App., 339 So.2d 91, cert. denied, Ala., 339 So.2d 95. The means with which a homicide is committed is not such a constituent element of the offense, and defects dealing with such a deficiency must be taken advantage of by demurrer. Albright v. State, 50 Ala.App. 480, 280 So.2d 186 (1973), cert. denied, 291 Ala. 771, 280 So.2d 191; Nelson v. State, 50 Ala.App. 285, 278 So.2d 734 (1973). However, as we noted in Nelson, the deficiency in the indictment must not be so great as to fail to apprise the accused of the crime with which he is charged and against which he must defend himself. See also: Andrews v. State, Ala.Cr.App., 344 So.2d 533 (1977), cert. denied, Ala., 344 So.2d 538. This case differs from Nelson in that the offense and means are set forth, although with some miswording in alleging the quo modo.
Appellant failed to raise this issue by demurrer or by any plea addressed to this defect. Because this indictment is merely voidable and subject to demurrer, the failure of appellant to demur prevents our review of this question. Williams v. State, Ala.Cr.App., 333 So.2d 610 (1976), affirmed, Ala., 333 So.2d 613.
IV
The appellant argues the evidence of the blood test was erroneously admitted because there was a break in the chain of custody of the blood sample itself. Chain of custody evidence must show with reasonable probability that the substance involved is one in the same and in the same condition. Bell v. State, Ala.Cr.App., 339 So.2d 96 (1976). Nurse Diane Coe testified she extracted the blood from appellant into a vial which she labeled with a diamond tip pen and then gave to Trooper Smith. Smith testified he was present when the blood was drawn. The vial was then given to him, and he kept it in his care, custody, and control until he left it at the toxicology lab office sometime after 3:45 A.M. on the morning of the collision, Saturday, October 9, 1976. Martha Odom testified she received the vial bearing appellant’s name from a locked evidence box in the toxicology office where samples of blood are deposited on weekends. She then placed the vial in a refrigerator in the toxicology lab. Ms. Odom testified she and Kim Gibson removed the vial with appellant’s name from the lab refrigerator. Kim Gibson stated her analysis as to the blood alcohol content was based upon the blood contained in the stoppered and sealed vial she received from Ms. Odom.
The only possible breaks here are (1) in Trooper Smith’s failure to specify that he deposited the vial in the locked evidence box in the toxicology office and (2) in the vial being placed in the lab refrigerator. The evidence proves with reasonable probability that the vial was the one in question. Bell, supra. The above omissions do not constitute the necessary break in the chain of custody to require exclusion of this evidence. Langford v. State, Ala.Cr.App., 354 So.2d 297 (1977). If a weak link in the chain of custody is assumed arguendo, it would present a question of credit and weight only and not one of admissibility. McClay v. State, 51 Ala.App. 30, 282 So.2d 379 (1973).
All the grounds relied upon by appellant for reversal have been considered in light of the record, briefs, and argument of counsel, and we find no prejudicial error which would mandate a retrial of the case.
AFFIRMED.
All the Judges concur.