171 So.2d 77

**Billy Ray COZART**

v.

**STATE.**

8 Div. 934.

Court of Appeals of Alabama.

Oct. 20, 1964.

Rehearing Denied Nov. 3, 1964.

CATES, Judge.

This appeal is from a judgment of conviction of voluntary manslaughter on a first degree murder indictment tried in the Lauderdale Circuit Court. The jury set the punishment at ten years.

The questions for decision are: (1) Whether we, without any transcript of the evidence, can review the ruling of the trial judge that Patton Island, owned by the United States and which was the scene of the killing, was not within the exclusive legislative jurisdiction[1] of the Congress, and (2) was there sufficient evidence to support submission of each and every count on a multi-count indictment the defendant having asked, in writing, for the affirmative charge with hypothesis as to each count.

W. A. Barnett, Florence, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

I.

*Plea of Federal Jurisdiction*

██ The first question is not one involving Congressional intent to preempt a species of crime but one of territorial as well as political sovereignty. Pollard's Lessee v. Hagen, 44 U.S. (3 How.) 212, 11 L.Ed. 565. Though the alleged crime may have been

1. Art. I, § 8, cl. 17, U. S. Constitution.

2. § 1505: "The state of Alabama has ceded to the United States of America jurisdiction over all lands which have been or may hereafter be purchased or

otherwise acquired by the said United States in the state of Alabama, for the purpose of erecting thereon any armory, arsenal, fort, fortification, navy yard, custom house, light house, post-office, or public building of any kind whatever, and

committed in a Federal enclave therein, Code 1940, T. 15, § 90, would not make the accused amenable to punishment by the laws of Alabama if the offense was "exclusively cognizable in the United States courts." Homicide, 18 U.S.C.A. §§ 1111 (b) and 1112(b), is a federal felony if committed on ceded lands. 18 U.S.C.A. § 7.

Cozart's counsel was confronted by our abbreviated form of indictment which omits any averment of the place of the homicide. If the geographic facts were undisputed, there would only be a question of law, that is, had Congress taken exclusive power to legislate over the territory in question.

The record, however, does not set out the evidence given on the issue made up by the defendant's special pleas.

The trial judge, in giving pretrial judgment for the State, recited:

"The place in question is the middle portion, or [of] a 413.6 acre tract, of Patton Island in Lauderdale County, Alabama, acquired by the Tennessee Valley Authority in the name of the United States from private parties in 1939."

Also, he referred to §§ 1505 and 1506[2] of the 1923 Code as an offer of cession by Alabama. However, he concluded the evidence showed the United States had not accepted.

Before 1940 certain purposes of acquisition automatically carried implied Federal acceptance. Thus our Attorney General ruled that land for locks and dams came within the scope of §§ 1505 and 1506, supra. Quarterly Report of Attorney General, Vol. 23, p. 227.

Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, held that when Congress acted in establishing the Tennessee Valley Authority it acted under its enumerated powers of commerce and war. Navigation and flood control are aspects of commercial regulation. Such by-products as electric power and recreation facilities were viewed as necessary incidental activities and not as severable unconstitutional ones.

Thus the United States, when acting through TVA, is acting primarily in the interests of navigation and flood control.[3] And, as Senator Norris is quoted in the Congressional Record, April 30, 1940, Vol. 86, p. 5242, "the Federal Government owns all the properties that they possess. TVA does not own anything."

Without having before us the evidence on which the trial judge made his findings of jurisdictional facts, we cannot review his ruling. Beasley v. Beasley, 256 Ala. 647, 57 So.2d 69. The question as to jurisdiction of the subject matter, if it falls under State v. Blair, 238 Ala. 377, 191 So. 237, can be later raised either in a Federal court or by writ of error coram nobis in a state court. People v. Buffo, 318 Ill. 380, 149 N.E. 271; Spears v. State, 26 Ala.App. 376, 160 So. 727.

II.

The deceased, Evywon Curtis, and the defendant had been camping out on Patton Island in the Tennessee River. On a Saturday night a group of insular campers were fishing, frying fish and drinking whiskey, off and on all night.

Sunday Cozart went ashore and came back with a boatman. Finding Evywon had gone to a rock spring on the Colbert Coun-

the legislature of the State of Alabama has consented to all such purchases or acquisitions by said United States of America."

§ 1506: "The jurisdiction ceded shall continue during the term the United States of America shall remain owner of the land so purchased, and shall be exclusive for all purposes except that the

service of process issued out of the courts of the state of Alabama, shall not be prevented therein."

3. 16 U.S.C.A. § 831 h–1: "The Board is directed in the operation of any dam or reservoir * * * to regulate the stream flow primarily for the purposes of promoting navigation and of controlling floods. * * *"

ty bank with Gene Berry, Cozart had the boatman take him there.

On Berry's leaving the spring, the boatman ferried Evywon and Cozart back to Patton Island, and on being paid shoved off. Evywon and Cozart exchanged angry words.

Witnesses saw Cozart bring Evywon up the bank dragging her. Some testimony was that he was pulling her by the hair though it is not clear as to whether or not he had hold of any of the rest of her as he pulled her. Certainly she seems to have been at least partly walking even though pulled.

With Evywon protesting and asking to be turned loose, Cozart brought her to a spot between two cots, then he slammed her on the ground. One witness said he started stomping her: she saw his foot in the air.

Another witness stated Cozart slung the deceased to the ground. He hit her with, as the solicitor put it in a question, "a great deal of force." This witness turned her back, but heard three or four loud "licks." Some of the other campers slept through most of the attack.

The deceased went silent. Cozart and some others poured water on her, tried resuscitation, then took her to the Florence Boat Dock, thence to Coffee Memorial Hospital where she was found to be dead.

William T. McVay, an assistant State toxicologist, did an autopsy. He testified in part:

"* * * the pericardial sac * * * was filled with blood which compressed the chambers of the heart. About 400 cc's or less than a pint of blood was in [it] * * * the upper portion of the right ventricle was ruptured. The right ventricle is the right chamber of the heart which pumps the blood to the lungs. It was also noted that a dissecting hematoma was present in the pulmonary artery. A dissecting hematoma is an infusion of the blood which dissects itself in between the tissues of the pulmonary artery itself. It was noted that the liver was lacerated below the round ligament of the liver which sits in the midline of the body and separates two of the lobes of the liver. It was noted that ribs number ten and eleven on the right side were fractured at the lateral spines of the tenth and eleventh thoracic vertebra—the thoracic vertebra are those that are in the spinal column, and ribs come off lateral spines."

The toxicologist stated the deceased's death resulted from the ruptured right ventricle which he said was caused by "a forceful and sudden bowing of the spinal column."

This, McVay said, could have been consistent with a man forcefully kicking her in the small of the back with his shoe on. The force of such a kick would have had to have been sufficient to arch the spinal column "enough so that the round ligament of the liver and compress on the liver itself and lacerate it and catch the heart between the breast bone and spinal column to give it enough compression to rupture the heart."

In addition to the consistency with a kick from a man's shod foot, McVay was of the opinion that the rupture could have consistently resulted from a forceful blow (as above qualified) delivered by (1) a blunt instrument if "blunt enough," or (2) a fist.

III.

The indictment was in six counts, each alleging that Cozart, with the required mens rea, killed Evywon Reese Curtis. Count 1 alleged he did so by stamping with his foot; count 2, by kicking with his foot; count 3, by striking with his fist; count 4, by striking with some blunt instrument to the grand jury unknown; count 5, with some weapon to the grand jury unknown; and count 6, by some means to the grand jury unknown.

The jury's finding was guilty of manslaughter in the first degree and set Cozart's punishment at ten years imprisonment in the penitentiary.

■ The grand jury may aver the same killing in several counts to meet unexpected aspects of the same transaction as the evidence unfolds. Nevertheless there is but one act—murder or manslaughter. Nixon v. State, 268 Ala. 101, 105 So.2d 349.

■ The means of murder (as well as of other crimes) can be laid alternatively.[4] But defects of law, e. g., duplicity, may be waived if not demurred to. Hornsby v. State, 94 Ala. 55, 10 So. 522.

This case hinges, however, not on a ruling on demurrer but from the trial judge's refusing the two following charges requested by the defendant before the jury retired:

"23. I charge you if you believe the evidence you will find the defendant not guilty under Count Four of the indictment.

"24. I charge you if you believe the evidence you will find the defendant not guilty under Count Five of the indictment."

The form of the "belief" charge to pose acquittal to the jury was expressly approved in Green v. State, 68 Ala. 539. There the Court, per Brickell, C. J., stated:

"Assuming the sufficiency of the indictment, and that it includes a charge of burglary and of larceny, of either of which a conviction could be had properly, the burden of proving the facts constituting either offense, it is not a mere truism to say, rested upon the State. If there was no proof having a fair, legitimate, reasonable tendency to prove that either offense had been committed, or, if either offense had been committed, connecting the accused with its commission, the court,

on the written request of the accused, was bound so to instruct the jury. The statute, applicable to civil and criminal trials, requires the court, on the request of one of the parties, to charge upon the effect of the testimony (Code of 1876, § 3028), where there is no conflict in the evidence, whether it be direct or circumstantial, and it is wholly insufficient to warrant a judgment; or, if a demurrer to its sufficiency would be sustained, the court should, at the request of the party against whom it is introduced, charge directly that it is insufficient, and that the verdict of the jury should be for such party.'

Hence, we are presented with the office of Code 1940, T. 7, § 270, which reads:

"The court may state to the jury the law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties."

In Rowe v. State, 243 Ala. 618, 11 So.2d 749, the trial judge in his oral charge said, among other things, " * * * frankly, I charge you, there is no evidence of insanity in this case." This was held not to breach § 270, supra, as an unsolicited comment of the court on evidence because there was no evidence. The issue of insanity was not in dispute because of the lack of proof altogether.

All there is to support counts 4 and 5 are the bare results, i. e., the ruptured ventricle of the deceased's heart.

There is no evidence of Cozart using or having available for his use either any blunt instrument or any weapon unless there is an *assumption* that he had shoes on while he was stomping or kicking her.

■ The means of murder is not of the essence since it is not an "element." Gaines v. State, 146 Ala. 16, 41 So. 865. Nevethe-

---

4. Code 1940, T. 15, § 247. See Wesson v. State, 251 Ala. 33, 36 So.2d 361, as to the supposed need to allege the means *conjunctively* if in the same count. The State there adduced ample proof of both beating with fists and kicking.

less, in adjectival law, our Code (form 79, T. 15, § 259) calls for a description of the means used by the defendant to kill, as by shooting the deceased with a pistol or a gun, or by striking him with an iron weight.

■ Leaving out the means of homicide is a demurrable defect. Gaines v. State, supra; Langham v. State, 243 Ala. 564, 11 So.2d 131. As was done here, the grand jury may aver that the means were unknown to them. T. 15, § 242.

In Langham v. State, supra, error rested in denying a defense motion to exclude the evidence. The State failed to prove either of the two good counts.

Blackstone, iv Comm. 196, of the mode of killing in murder, says:

"* * * The killing may be by poisoning, striking, starving, drowning, and a thousand other forms of death, by which human nature may be overcome. And if a person be indicted for one species of killing, as by *poisoning,* he cannot be convicted by evidence of a totally different species of death, as by *shooting* with a pistol, or *starving.* But where they only differ in circumstances, as if a *wound* be alleged to be given with a sword, and it proves to have arisen from a staff, an ax, or a hatchet, this difference is immaterial. * * *"

Professor Beale, in Criminal Pleading and Practice, Ch. XXIII, Indictment for Homicide, § 188, adds:

"* * * On this principle an indictment for an assault with a club cannot be supported by evidence that it was with a pistol used for striking; nor an assault with a knife, by proof of assault with a stick; nor killing with a blow of the fist, by proof of knocking down against a stone, which killed. * * *" (Citations omitted.)

The Attorney General relies on T. 15, § 242, supra, and McDonald v. State, 241 Ala. 172, 1 So.2d 658. Analytically, however, McDonald supports the defendant as an application of T. 7, § 270, supra.

In McDonald charge 2 (among others) related to an acquittal of count 3. The opinion states:

"The evidence going to show what instrument was used in committing the offense is left in *inference,* and was a question for jury decision, therefore charges 2, 3, 4, 5, 6 and 7, were refused without error." (Italics added.)

The McDonald record contains a six count indictment for killing the deceased by (1) an ax; (2) a gun or pistol; (3) a blunt instrument; (4) setting a fire; (5) some weapon; and (6) by some means unknown.

McDonald's bill of exceptions shows that the deceased's body was found in a burning building. The skull was burst open, nearby were two double bitted axes and an iron rod. An accomplice of the defendant had gone down to the building with a pistol. Afterwards the fire started up. The defendant and accomplice had bought ten gallons of gasoline.

Hence, any one or more of the means charged to McDonald could have contributed to the death. Moreover, "inference" means a degree of conviction coming from proof of some fact. Inference must have a palpable beginning.

As we view the evidence most favorable to the State, if Cozart's acts contributed to the death of the deceased, these acts must fall under: (1) slamming (or slinging) her to the ground, (2) stomping (or stamping) her, i. e., kicking down with the sole of the foot, (3) kicking her, or (4) administering loud licks.

When tested, count 4, striking with a blunt instrument, stands as a separate indictment. Webster's International Dictionary (2d Ed.) defines "blunt" as follows:

"3. Having a thick edge or point; dull; not sharp or keen."

Under synonyms Webster states:

"* * * *Blunt, dull,* and *obtuse* also come into comparison as applied to tools, instruments, etc. *Blunt* and *dull*

(opposed to *sharp, keen,* with reference to either point or edge) are sometimes interchanged. In present usage, however, *blunt* appears to be more commonly used of instruments or tools so made that a cross section near the edge subrends a relatively large angle; *Dull,* of a tool or instrument whose edge or point has lost its keenness or sharpness by use; thus, an ax, even when sharp, is a *blunt* instrument as compared with a razor; a crowbar is *blunter* than a chisel, though neither may be *dull* (cf., to strike a blow with the *blunt*—not *dull* —side of an ax or sword, as opposed to its flat or edge); a *dull* pencil is made so by use, but one may purposely put a *blunt (*not a *dull)* point on a pencil in sharpening it; the *blunt* nose of the beaver. * * *"

Webster defines "instrument" as:

"1. That by means of which any work is performed or result is effected; a medium; means.

"2. A tool; utensil; implement."

See Williams v. State, 144 Ala. 14, 40 So. 405.

■ Certainly no witness saw Cozart have anything in his hand either as a club or a missile. McVay's expert testimony pointed to a number of different possible causes without according priority one over the other.

Concededly, a shoe can be a weapon under given conditions. Goss v. State, 61 Ga.App. 621, 7 S.E.2d 87. Whether Cozart had on shoes or not does not appear. Under Rager v. State, 38 Ala.App. 225, 81 So.2d 923, the use of a "shoe" in an assault charge does not import any of the weapons set forth in Code 1940, T. 14, § 34.

However, when the quo modo is charged, as here, killing by kicking or stamping, then whether the assailant's foot is shod or not goes only to show the nature of the blow inflicted. If the shoe, however, is used as a club or missile, then its use is as-cribed to the manual as distinguished from the pedal extremities, and would fall under beating to death with a shoe or some such phrase.

Had there been evidence that Cozart's shoes, if any, were "blunt" so as to connect up with McVay's theory of a blow (1) forcefully administered, and (2) with a "blunt enough" instrument, this would have been support of his stamping (count 1), kicking (count 2), or "striking with some blunt instrument (count 4) worn on his foot."

But we are not aware of any evidence that directly states what sort of shoes Cozart had on, if he wore any. Thus unaided, we could not say tennis sneakers or moccasins would be "blunt enough" within McVay's specification.

■ Therefore, since there were express charges against him of assault with his feet in counts 1 and 2, we cannot assign kicking or stamping as the equivalent *under the absence of evidence* of something "blunt enough" used by Cozart to fall under count 4.

Count 5 is even clearer to reversal. Webster, supra, defines "weapon":

"1. An instrument of offensive or defensive combat; something to fight with; anything used, or designed to be used, in destroying, defeating, or injuring, an enemy, as a gun, a sword, a shield, etc."

Cyclopedic Law Dictionary (3d Ed.), p. 1173, defines "weapon" as:

"An instrument of offensive or defensive combat; something to fight with."

■ Moreover, the mere showing of the use of a fist does not make out use of a weapon. Corcoran v. State, 18 Ala.App. 202, 89 So. 835; Bean v. State, 77 Okl.Cr. 73, 138 P.2d 563; State v. Rizor, 353 Mo. 368, 182 S.W.2d 525.

■ Finally, we have considered the doctrine of looking to the result to find the cause. This is permissible reasoning if it

encompasses the agency of the defendant. Much as in res ipsa loquitur, there must be a showing of the defendant having (in criminal law) some control of the deleterious substance. See Bluth v. State, 38 Ala.App. 692, 92 So.2d 685.

Here the defense adduced testimony which, if credited, could ascribe the death to the deceased's falling, in one instance, from a small bluff; in another, into thwarts of a boat; and again, over some tree roots and stumps at the river's edge. Coupled with her undisputed drinking, as a matter of law, we cannot say the evidence before the jury was undisputed as to Cozart being the agent of death.

Though we treat murder indictments as one transaction, yet each count must stand or fall on its own merits. Not only is this the rule on demurrer but it also prevails when test is made after the proof is in and the defense asks that a count be charged out.

Here there was no evidence to support counts 4 and 5. The refusal of charges 23 and 24 was error. Hawes v. State, 216 Ala. 151, 112 So. 761; Jones v. State, 236 Ala. 30, 182 So. 404; Gayden v. State, 38 Ala. App. 39, 80 So.2d 495 (aff'd 262 Ala. 468, 80 So.2d 501); Jackson v. State, 33 Ala. App. 42, 31 So.2d 514; Moore v. State, 35 Ala.App. 160, 44 So.2d 789; Smith v. State, 39 Ala.App. 673, 107 So.2d 575.

Nor does Supreme Court Rule 45 avoid reversal here. In a civil action, Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379, the court, per Merrill, J., says:

> "The doctrine of error without injury cannot be applied to the refusal of a charge denying the plaintiff's right to recovery under one of the counts of the complaint which was not supported by any evidence, merely because there was evidence tending to support the other count, and the verdict of the jury was probably founded on them. * * *"

Accordingly, the court's refusal to give charges 23 and 24 constitutes error to the prejudice of the defendant, and requires a reversal of the judgment below.

Reversed and remanded.

