286 So.2d 91

**Albert MATTHEWS, Alias**

v.

**STATE.**
**6 Div. 493.**

Court of Criminal Appeals of Alabama.

Nov. 13, 1973.

Louis W. Scholl, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of murder in the first degree and his punishment fixed at life imprisonment. He was represented in the trial court by appointed counsel who represents him on appeal and he is here with a free transcript.

The indictment charges that appellant killed James T. McCall by stabbing him with a *file*. Appellant, deceased and several other men and women lived at a room-

ing house at 1109 Seventh Avenue, North, Birmingham, Alabama. It was in this house that the killing occurred on April 16, 1972, around 7:00 P.M.

Robert Lee Alexander testified that he was in charge of the rooming house and as part of his duties he collected rent from the roomers. This was a two-story house and Alexander had a room downstairs where he lived with his common-law wife of two years. Appellant and Sterling Harris had separate rooms upstairs. The deceased had a room to himself.

Just before the killing Alexander, his wife and others were in Alexander's bedroom watching the television show "To Catch A Thief". The deceased came in the room and said something to Alexander, who walked out into the hall and saw appellant talking to Harris, who was standing on the second step of the staircase. Alexander told appellant to stop bothering the old man and told Harris to go to his room. The deceased was standing in the hallway at this time. Alexander returned to his room to get a cigarette and while in the room he heard appellant say, "I don't like you", after which he heard a commotion. He went back into the hall and saw the deceased falling against a wall and then to the floor on his face. He saw appellant bend over the deceased and stab him in the back with a knife. Asked to describe the knife, he replied, "Well, all I know, about this long with a silver metal handle on it." After stabbing the prostrate body of the deceased, appellant jerked the knife out of his back and ran out the front door.

Appellant immediately left Alabama and took refuge in the State of Texas. On or about April 29, 1972, he was arrested by a police officer of the City of Houston on a charge of public drunkenness. After his arrest he told the officers that he had killed a man in Birmingham on April 16, but that he acted in self-defense. The Houston Police Department notified Birmingham of appellant's arrest and that he would waive extradition. He was returned to Birmingham on May 18, 1972.

W. L. Allen, a deputy coroner of Jefferson County with thirteen years of experience, whose qualifications were properly proved, testified that he went to the rooming house on the night of the homicide and examined the body of the deceased. On external examination, he found one knife wound in the chest, one in the back, and one in the shoulder. The body was removed to the funeral home where the coroner made a more definitive examination and the wounds were probed. In describing the chest wound, the coroner testified:

"On the front part of his body I found a stab wound which was located two and a half inches down from the upper sternal notch, which is the notch right at the top of the sternum. It was two and a half inches down and one and a half inches of the midline of the body. This wound I probed for a distance of four inches going down and toward the center of the body and into the pericardium of the heart."

He probed the wound in the left shoulder for a distance of one and a half inches and the wound in the mid-back for a depth of three inches. He expressed the opinion that the stab found that went into the pericardium (the sac in which the heart is encased) pierced the heart and this particular wound caused death.

The death weapon was not found. When the state rested, appellant moved to exclude the evidence for failure of the state to make out a prima facie case, and on the further ground there was a fatal variance between the allegations of the indictment that the death weapon was a *file* and the proof adduced showed that the deceased was killed with a *knife*.

In Cozart v. State, 42 Ala.App. 535, 171 So.2d 77, the Court of Appeals quoted from Blackstone iv Comm. 196 as to the mode of killing in a murder case:

" '* * * The killing may be by poisoning, striking, starving, drowning, and a thousand other forms of death, by

which human nature may be overcome. And if a person be indicted for one species of killing, as by *poisoning,* he cannot be convicted by evidence of a totally different species of death, as by *shooting* with a pistol, or *starving.* But where they only differ in circumstances, as if a *wound* be alleged to be given with a sword, and it proves to have arisen from a staff, an ax, or a hatchet, this difference is immaterial. * * *'"

■ If the weapon or instrument charged, and that proved, are of the same nature and character, there is no variance. It is sufficient if the proof agrees with the allegation in its substance and generic character, without precise conformity in every particular. Under the averment of a *file,* it is permissible to prove that death was caused by the use of a *knife,* a *dirk,* a *dagger,* a *razor,* or other like instrument which occasions a wound of the same kind and character as the instrument charged, and the same consequences naturally follow. Where an indictment alleges the means by which an offense is committed, it must be substantially, though not literally, proven as alleged. Phillips v. State, 68 Ala. 469; Jones v. State, 137 Ala. 12, 34 So. 681; Huckabee v. State, 159 Ala. 45, 48 So. 796.

In his oral charge to the jury, the court correctly charged on the definition of murder in the first degree, murder in the second degree and manslaughter in the first degree. Further charging the jury on malice, the court said:

"The law presumes malice from the use of a deadly weapon unless the evidence which shows the killing shows also that it was perpetrated without malice. And whenever evidence of malice is shown beyond a reasonable doubt and is unrebutted by the circumstances of the killing, there can be no conviction for a lesser degree of unlawful homicide than murder and, ladies and gentlemen, a knife is a deadly weapon under the law of the State of Alabama. Now for instance, if the killing is done with a deadly weapon, such as a knife, the law authorizes the jury to presume malice from the killing unless the evidence which proves the killing shows also that it was done without malice."

■■ A "deadly weapon" is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used. A knife is a deadly weapon. A penknife is a deadly weapon when used to strike a person in the neck or other vital part of the human anatomy. The *file* used in the instant case was plunged four inches into the chest wall of the deceased, penetrating the heart, and produced death. It was, thus, a deadly weapon in the manner in which it was used and the consequences which followed. Williams v. State, 251 Ala. 397, 39 So.2d 37; Coates v. State, 29 Ala.App. 616, 199 So. 830; Thomas v. State, 31 Ala.App. 1, 9 So.2d 150; Threatt v. State, 32 Ala. App. 416, 26 So.2d 530.

■ The principal witness against appellant was Robert Lee Alexander. He was shown on direct and cross-examination to have a long string of felony convictions including assault with intent to murder, burglary, grand larceny, robbery, rape, petty larceny and violating the Dyer Act (transporting a stolen automobile across state lines). All of these convictions involve moral turpitude. These convictions were admissible only as affecting his credibility as a witness, Title 7, Section 434, Code of Alabama 1940, and not as to his competency.

■ Appellant contends that the trial court erred in sustaining the state's objection to inquiries relating to Alexander's discharge from military service. There was no proof that this witness was court-martialed during his military service, nor that he was tried and convicted of a crime involving moral turpitude. The witness did not know what type of discharge he received from the service. A conviction by a

**420**

court-martial, a court of competent jurisdiction for military offenses, is admissible as affecting the credibility of a witness, provided the offense for which a conviction was had was one involving moral turpitude. Alexander denied that he ran afoul of the Articles of War and no proof was offered to impeach him. Nelson v. State, 35 Ala.App. 179, 44 So.2d 802.

No errors appearing and the entire record in the case being regular in all respects, it follows that the judgment of conviction must stand affirmed.

Affirmed.

All the Judges concur.