Murder; sentence: life imprisonment.
The victim, Linda Sue Trest, mother of two small children and the estranged wife of the appellant, was murdered on the morning of November 3, 1980, by her husband as she sat in her automobile after driving her son to his school bus stop. The couple had been separated approximately six weeks at the time the husband decided to wait for her at the bus stop in order to discuss their marital situation. Several witnesses who knew or could recognize the victim were in the habit of seeing her with her son at the bus stop and testified to having seen her there the morning of the murder. They observed her in the company of a blond or light-haired young man with a mustache whom they identified at trial as the appellant. Mrs. Trest was found at the bus stop later that morning, still seated in her automobile, with three gunshot wounds to the head.
The appellant, testifying in his own behalf, admitted that he waited at the bus stop that morning to attempt to talk privately with his wife about their relationship. She allowed him to enter her vehicle. After their small son departed on the bus, he questioned her on her intent to obtain a divorce. He then accused her of having an affair with his brother David. He said she first denied the accusation, but then admitted the affair. Appellant testified that he had brought a handgun with him that morning in order to kill himself in his wife's presence. However, when she admitted the affair to him, he became so upset his "blood went to boiling," and he pulled the gun and fired four times, hitting her three times in *Page 908 
the head. His version, of the murder appears in the record as follows:
 "A. I shot, I think, four times. I shot once which it hit her in the neck, and I looked at her for a moment and she was just laying [sic] there looking back at me as if she was in pain, or something, and I loved her so much I didn't want to see her in that pain so I shot again and missed. And shot once more and hit her in the head somewhere.
"Q. And did you shoot her again?
 "A. Yes, sir. At that time I walked around the car to get on my motor to leave and I looked back at her and there was feelings in my heart that she was still alive and suffering and I didn't want to see her suffer so I shot one more time."
Appellant stated that after shooting his wife he aimed the gun at his own head and pulled the trigger twice, but the gun failed to fire.
Appellant's brother, David Trest, testified on the State's rebuttal that he was not having an affair with appellant's wife.
 I
Appellant argues that the court erred in admitting his inculpatory statement made without assistance of counsel and without a proper showing of voluntariness. Appellant's sole contention rests on the fact that after appellant was informed of his rights and acknowledged understanding them, and after having sent for an attorney, he began an unsolicited confession without interrogation by the officers in control.
The officers investigating the case testified that no threat, inducement or offer of reward was made to appellant to prompt his statement. After having been read his Miranda rights, appellant stated that his brother had gone to obtain an attorney. Officer Stanley Fant told appellant that was a wise decision due to the nature of the charge. However, as Officer Fant and Officer Robert Stewart began talking between themselves, the appellant interrupted with a spontaneous statement that he did not intend to kill his wife, that he borrowed the pistol to kill himself in his wife's presence. Officer Stewart at this point again cautioned appellant to discuss the matter with his attorney, but appellant continued his statement. The statement was not memorialized in writing by the investigators, but was related orally from memory by Officer Stewart at trial. The statement reflected the substance of appellant's own testimony given at trial, related hereinabove.
Because appellant voluntarily and without solicitation made a statement to the investigating officers as they talked to each other, appellant argues their conversation must have been of such a nature as to impermissibly elicit inadmissible statements. Such a contention is unfounded and mere speculation. The record reflects no such improper conversation even though both investigating officers were thoroughly examined and cross-examined at length by prosecution and defense attorneys. In fact, Officer Fant was cut off by defense counsel on cross-examination when he started to relate the substance of the conversation Officer Stewart was having with him at that time. No evidence of improper inducement of any nature is apparent from the trial record which would bring this case within the purview of Rhode Island v. Innis, 446 U.S. 291,100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
When appellant advised the officers that his brother had gone to obtain an attorney for him, all questioning ceased, as is now required by Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Indeed, if anything, the record reflects the investigating officers were solicitous in their attempts to prevent the appellant from talking without benefit of counsel, rather than the opposite as argued by appellant. Additionally, appellant testified at trial that he recalled having been read his rights and being asked about obtaining an attorney by Officer Stewart. Also, he stated that Officer Stewart's oral account of the statement was substantially correct. *Page 909 
This court cannot resort to speculation as to matters not presented in the trial record. We are confined to the review of facts ascertainable from the record. Dumas v. State, Ala.Cr.App., 369 So.2d 317 (1979). There is no conflicting or contradictory evidence presented in the record which places the voluntariness of appellant's statement in question. The issue of voluntariness was correctly heard and determined by the trial judge, and his decision will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence.McNair v. State, 50 Ala. App. 465, 280 So.2d 171, cert. denied,291 Ala. 789, 280 So.2d 177 (1973). We find no merit to appellant's contention of hypothetical impropriety or interference with assistance of counsel. The statement was correctly admitted.
 II
Appellant alleges that a material variance existed between the weapon designated in the indictment and the proof at trial as to the type of weapon used in committing the offense. The indictment charged that the deceased was shot with a "thirty-eight caliber pistol." Proof at trial by firearms expert Richard Dale Carter was that the bullets taken from Mrs. Trest's wounds were either .38 or .357 caliber bullets fired from a revolver. Carter stated that both such bullets are actually .35 caliber bullets, that they differ only in the amount of powder each contains and the length of the case or hull. He testified that technically there is no difference between the two bullets, that they are interchangeable in use.
Where the weapon designated in the indictment and the weapon proved at trial are of the same nature and character, there is no variance. The law does not require precise conformity in every particular where the weapon is alleged, but rather substantial proof of the means by which the offense was committed. Matthews v. State, 51 Ala. App. 417, 286 So.2d 91
(1973); Threatt v. State, 32 Ala. App. 416, 26 So.2d 530 (1946). Further, we perceive the jury was presented with evidence by the State from which it could have concluded the deceased was murdered by a .38 caliber pistol.
We have reviewed the entire record and find no error harmful to the substantial rights of appellant.
AFFIRMED.
All the Judges concur.