Appellant was indicted by the Macon County Grand Jury for the murder of Jessie Stafford. At arraignment appellant plead not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty, and the court sentenced appellant to thirty-five years' imprisonment. Because appellant questioned the sufficiency of the evidence, we set forth the relevant proof adduced at trial in detail below.
Dr. Thomas F. Gilchrist, a State forensic pathologist, testified he examined the body of Jessie Stafford on July 19, 1981, and determined the victim had received three bullet wounds. His examination indicated that the gun which inflicted the wounds was fired within inches of the victim's body. One bullet passed through the lungs and heart of the victim and in Dr. Gilchrist's opinion was the cause of the victim's death. *Page 475 
The projectory of the bullet was slightly, but not greatly upward.
Dr. Gilchrist testified that the Drug and Alcohol report on the victim indicated he had a blood alcohol content of .15 percent.
James E. Moore testified he was at the Club Connection in Hardaway, Alabama on July 18, 1981. Around 8:30 p.m., Mr. Moore was standing outside talking with his brother-in-law and to the appellant, when the victim drove up in a truck. The victim shut his motor off, and then restarted the truck. As the victim sat in his truck, appellant walked over to his automobile and stood for a few seconds. He then walked to the truck and pulled a gun from his bosom. He shot the victim, who fell over in the truck. After he fell, appellant shot him again. Both shots were fired at a very close range. Appellant then put the gun in his vehicle, called his wife to leave, and then drove away.
Mr. Moore stated he was the first person to go to the truck after the shooting. He observed a rifle under the seat of the victim's truck with the stock toward the driver's side. He did not see a gun rack in the truck. He observed a sheriff's deputy remove the rifle from under the truck seat. He stated the victim could not have gotten the rifle out without first opening the door, and getting out of the truck to pull the rifle out from under the seat.
Mr. Moore testified that he did not witness any argument between the two men. Neither man, to his knowledge, spoke to the other one.
William James Allen, owner of the Club Connection, stated he saw the victim seated in his still running truck outside the club around 8:30 p.m. on July 18, 1981. Mr. Allen went back inside his club for a few minutes, and when he came back out appellant was walking towards the victim's truck. Appellant held his hands down beside him until he reached the truck. Appellant then raised a gun and said "You'll never draw another gun on me." He then shot the victim twice, shooting him a second time after he slumped over in the truck.
Mr. Allen stated he did not see a gun rack in the truck. He did later see an officer take a rifle, stock end first, out from under the truck seat. Mr. Allen did not see the victim point any weapon at appellant. He also denied that the deceased had threatened appellant at his club the preceding Saturday.
James Merchant, a Macon County Deputy Sheriff, testified he arrived on the scene at the Club Connection at 8:40 p.m. on July 18, 1981. Deputy Merchant was not on duty at that time. He observed a truck occupied by a black male. He called an ambulance and returned to the truck. Approximately ten minutes later Deputies Pearson and Hurry arrived. Chief Deputy Smith arrived after about fifteen minutes.
Deputy Merchant observed a rifle barrel lying on the floorboard of the truck with the victim's arm hanging off the seat over the barrel. When Major Pearson arrived, he removed the rifle from the driver's side of the truck, stock end first. Deputy Merchant stated the gun could not have been taken out without opening the door.
Major Waddell Pearson of the Macon County Sheriff's Department stated he arrived at the murder scene at 9:00 p.m. He removed a twenty-two caliber rifle from under the seat of the victim's truck. He stated the rifle could not have been removed while sitting in the truck with the door closed. A rifle and bullets which Major Pearson identified as those from the scene were introduced into evidence. A bullet was in the chamber of the rifle when he removed it from the truck. Major Pearson denied that it was necessary to raise the deceased's shoulder and arm to remove the gun from under the deceased.
Macon County Chief Deputy Sheriff James Smith stated he talked to appellant at 11:20 p.m. on July 18, 1981. After he gave appellant the Miranda warnings, appellant signed a waiver of rights form. He then gave a statement which appears in the record in pertinent part as follows:
 ". . . I stood out there talking to James H. Moore when Stafford pulled up in his truck beside my car that was parked in *Page 476 
the yard. Then he backed up at my car and stopped. I turned around and took a gun — I turned around and took a gun from — just a minute. He backed up at my car and stopped and turned around and took a shotgun from his rack. Then when everyone starts to run and left me there. I started to go to my car when I saw his, saw him trying to get the gun out of the window so I pulled my gun from my pocket which was a twenty-two caliber and started shooting at him. Then I threw the gun down on the ground. Then I called my old lady which was in the club and left and went home and called the Macon, called the Sheriff's Department and I told them I was turning myself in but they picked me up on the way in, on the road coming in." (R. 226-227)
Chief Deputy Smith stated that it came to his attention that after the shooting occurred, there was a rumor that the deceased had been "after" Allen Johnson.
The State rested at the close of Deputy Smith's testimony. Appellant's motion to exclude the State's evidence for failure to make out a case of murder under the indictment was overruled.
Appellant called as his first witness his common law wife, Amy Green. Ms. Green stated she had heard rumors that the deceased was out to get the appellant, and that she had communicated the same to him prior to July 18, 1981.
Ms. Green testified that on July 11, 1981, she and appellant were at the Club Connection when the deceased and his nephew arrived. She overheard the deceased's nephew tell the deceased in relation to appellant, "We going to kill these m___ f___ like this." Appellant went inside the club while the deceased reached to get a gun from his truck. Appellant then got out of the truck with the gun. Appellant stayed inside and Ms. Green checked outside periodically until the deceased left. Appellant and his wife then left and went home.
The following Saturday, July 18, 1981, Ms. Green and appellant were again at the Club Connection when the deceased arrived in his truck. Ms. Green stated the following occurred:
 "I see Jesse when he pulled up, pulled up to Allen's car, he backed up and pull along side it and got his gun out of the rack, like this, so I went inside and told Bubba Allen and Bubba Allen came back and Julia Tuggle setting on the steps by the door and Bubba Allen came out. He getting that gun out and Allen walking over to his car, and you know, trying to get an aim at Allen to shoot Allen and Allen shot him." (R. 265)
The appellant next took the stand and corroborated his wife's version of the rumors and the occurrences on July 11 and 18, 1981, at the Club Connection. Appellant stated he was twelve to fifteen feet from the deceased when he shot him the first time.
Julia Tuggle, appellant's niece, and Virgil Lee Johnson, appellant's nephew, both testified and confirmed Ms. Green's version of the occurrences of July 18, 1981. Ms. Tuggle also stated she heard the threatening remark made on July 11, 1981. However, she stated the deceased was armed with a shotgun on July 18, 1981, rather than a rifle.
Johnson also testified as to the deceased's bad reputation for violence. As well, Johnson stated appellant was twelve feet from the victim when he shot him.
Nathan Sanford, appellant's nephew, testified as to the deceased's bad reputation, as well as to having heard that he was going to try to kill appellant.
Frank Johnson testified he had heard that the deceased had threatened appellant's life. As well, Johnson stated he heard the following:
 "A I was standing at the store and Johnson car passed and I heard, overheard, he was talking to another guy but I don't know who he was. He said `that's one man there that I'm going to get even with.'
 "Q All right, when you say about that time Johnson passed who are you referring to? *Page 477 
"A I said that's when the car passed, yes.
"Q All right. Are you talking about Allen Johnson?
"A Well, undoubtedly had to be." (R. 314)
Mr. Johnson also testified to the deceased's bad reputation for violence. The defense rested at the close of Mr. Johnson's testimony.
 I
Appellant argues the trial court erred in refusing to charge on self-defense and on the effect of bad character evidence concerning the deceased's reputation for violence and turbulence. Specifically, appellant has reference to the court's failure to give his requested charge number twenty-seven. The charge requested multiple propositions of law, dealing with burden of proof, as well as elements to be considered in the defense of self-defense.
Appellant's objection to the court's failure to charge as requested appears in the record as follows:
 "MR. HORNSBY: The defense objects to the Court's oral charge on the ground that the Judge did not charge the jury that they could consider the bad character of the victim or deceased. And the Judge has overruled this objection and given me the exception."
"THE COURT: Yes." (R. 332)
Appellant failed to call to the trial court's attention the specific refused written charge and set forth specific grounds for his objection to the refusal of such charge. Absent such action by appellant's counsel, there is nothing before this court to review in this regard. Allen v. State, 414 So.2d 989
(Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982).
 II
Appellant alleges he was entitled to a new trial because of alleged "prosecutorial misconduct" on the part of two deputy sheriffs who testified at trial. In essence, he contends the deputies fabricated physical evidence and testimony because the actual evidence could not be found at the time of trial. The evidence alleged to have been fabricated consisted of the rifle and shells the rifle contained which were found in the deceased's truck the night of the homicide.
We note that the appellant admits in brief that the presentation in evidence of the rifle and bullets was supportive of appellant's claim of self-defense. There was no evidence presented that the prosecution was in any wise aware of any possible discrepancies in the evidence prior to or at the time of its presentation into evidence. There is no indication that the prosecution engaged in a deliberate deception of the trial court and jurors by the presentation of known false evidence.
Our review of the record does not indicate that the appellant proved that the items positively were not the items they purported to be. Yet grave doubt as to their authenticity was raised, whether or not such was the result of deliberate efforts. Thus, because doubt was cast upon the evidence by the prosecutor's inability to prove a proper chain of custody, the trial court excluded the items from evidence, removing them from the jury's consideration. Although appellant did not object to the evidence at the time of its reception, nor conduct a voir dire of the witnesses prior to the introduction of the evidence, his subsequent request to have the items excluded was complied with by the court.
The appellant having contended that the deceased was armed with a rifle and that he shot the victim in self-defense, we can not conceive of how appellant's substantial rights could have been injuriously affected by the reception of the rifle and bullets. Cf. Jarrell v. State, 22 Ala. App. 304, 115 So. 146
(1928); Smith v. State, 342 So.2d 466 (Ala.Cr.App. 1977); Rule 45 Alabama Rules of Appellate Procedure.
Also, it was undisputed by both the State and appellant that the victim had the loaded rifle with him in the truck. The admission of evidence is harmless if that evidence concerns an undisputed matter. Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. *Page 478 quashed, 378 So.2d 1173 (Ala. 1979). Certainly, there is no error here where that same evidence is excluded at appellant's request.
 III
Appellant contends the jury's verdict was contrary to the weight of the evidence presented at trial. We have previously detailed the evidence in this opinion. Our review satisfies us that there was sufficient evidence to sustain the jury's verdict. The trial court did not err in denying appellant's motion to exclude the State's evidence, nor in refusing to grant a new trial on this ground. Carpenter v. State,400 So.2d 417 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981).
Where the defendant admits killing the victim, and the State puts forth a prima facie case of murder and evidence of who initiated the confrontation, the question of whether or not the act was justified as having been done in self-defense is for the jury. Townsend v. State, 402 So.2d 1097 (Ala.Cr.App. 1981);Atchley v. State, 393 So.2d 1034 (Ala.Cr.App. 1981).
Viewing the evidence presented at trial in the light most favorable to the State, we find no error in this regard.Carpenter, supra.
 IV
Appellant requested and was denied a change of venue, based upon rumors, prejudice, and bias against the appellant in the local community. A full hearing was held on appellant's motion, at which time he called numerous witnesses, including local law enforcement officers. Appellant relied as well upon a pre-trial motion by the prosecution to raise appellant's bond because the prosecutor had received information that physical harm could come to appellant if released. This information was supplied by the sheriff. The sheriff testified at the hearing that he had heard a rumor which he communicated to the district attorney's office. Upon later investigation, he learned the rumor had no basis in fact.
Each witness called by appellant in support of his motion testified, contrary to appellant's contention, that appellant could receive a fair trial by the local jury venire.
The defendant has the burden of showing that there was such prejudice prevailing in the local community that it is reasonably unlikely that he could receive a fair and impartial trial. McLaren v. State, 353 So.2d 24 (Ala.Cr.App.), cert.denied, 353 So.2d 35 (Ala. 1977). Whether or not to grant a change of venue is a matter within the discretion of the trial judge. The decision of the trial court will not be disturbed on appeal unless an abuse of that discretion is demonstrated.McLaren, supra; Hurley v. State, 335 So.2d 183 (Ala.Cr.App.),cert. denied, 335 So.2d 188 (Ala. 1976).
We have reviewed the evidence from the pre-trial motion, as well as evidence adduced at trial, and find no basis for the assertion that the trial court abused its discretion in denying appellant's motion. The trial judge was in the best position to correctly determine whether local conditions and sentiment were such as to cause a prejudicial atmosphere which could deprive the appellant of a fair and impartial trial. Botsford v. State,54 Ala. App. 482, 309 So.2d 835 (1974), cert. denied, 293 Ala. 745, 309 So.2d 844 (1975).
 V
Appellant's final contention is that the trial court erred in allowing into evidence certain autopsy photographs of the victim which were not made available to appellant prior to trial. The district attorney stated at trial that he also had never seen the pictures previously and that they had been in the sole possession of Dr. Gilchrist.
Appellant alleges the photographs should have been made available to him in compliance with his pre-trial motion for discovery. The record does not reveal that the trial court ever actually ruled, one way or the other, upon appellant's motion for discovery. Be that as it may, in light of our holding inJones v. State, 396 So.2d 140 *Page 479 
(Ala.Cr.App. 1981), we are fully satisfied that there was no error in the reception into evidence of the autopsy photographs.
No error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
All the Judges concur.