TYSON, Judge.
Herman Doss was indicted for the murder of Shelia Hogue, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment.” He was sentenced to life imprisonment without parole as a habitual felony offender.
Mary Price testified she was employed as the personnel and payroll clerk at Bristol Steel on March 25, 1983. On that day, the appellant, who also worked at Bristol Steel, clocked out at 11:09 a.m. after working approximately four hours.
At approximately 7:30 p.m. on March 25, 1983, Rickey Tisher was driving his car on Morgan Road going toward Bessemer. Mike Turley was a passenger in his car. In *1157 between the two bridges near the fire department on Morgan Road, Turley saw a blue truck coming across one of the bridges. The truck was in the wrong lane and Turley told Tisher to “look out.” Tisher pulled off the road and the truck went by going about seventy miles per hour. The two looked behind them and saw the truck go back into the correct lane and drive off the side of the road and then come back on the road. Tisher then saw a flash after the truck went out of sight.
When Tisher and Turley got to Highway 150, they met an ambulance and a police car going down Morgan Road.
Dr. Randall Poole testified he was the attending physician at the UAB Emergency Department on the night of March 25, 1983. At approximately 8:40 p.m., he received a patient named Shelia Hogue. At 9:10 p.m., Shelia Hogue was pronounced dead. She died as a result of massive trauma which was consistent with injuries received in an automobile collision. Hogue was approximately seven and one-half months pregnant at the time of her death.
Jeffrey Hogue testified that he, his wife, Shelia, and Cecil Watkins were in his Chevrolet truck going towards Bessemer on Morgan Road on the evening of March 25, 1983. Hogue does not remember anything else until he woke up in the hospital five days later. He then found out his wife and child were dead. Hogue had his spleen removed and sustained a crushed leg, arm and pelvis, and various internal injuries. He spent seven weeks in the hospital. His truck was a total loss as a result of the accident.
Cecil Watkins testified that he was with the Hogues on the night of the accident. While they were driving on Morgan Road, Jeff Hogue said, “Look out.” Watkins saw two headlights in the lane in which they were traveling.
After the accident, Watkins got out of the truck. Both of the Hogues were still in the truck and were unconscious. Watkins sustained a bump on the head.
Joe Hogue, Jeff Hogue’s father, stated he received a call about the accident shortly after it happened. He went to the scene and saw two similar looking pickup trucks had been involved in the accident. Joe Hogue went to one of the trucks and looked in the window. The appellant was in this truck. Joe Hogue smelled alcohol in the appellant’s truck. Joe Hogue then went to the other truck and found his son and daughter-in-law. He then rode in the ambulance with them to the hospital.
Chuck Lawley testified that he was a paramedic with the Bessemer Fire Department on March 25, 1983. That night, he responded to an accident on Morgan Road. When he arrived, Lawley realized that the accident was a head-on collision between two similar looking trucks and that there were multiple injuries. Lawley immediately called for assistance and then he started working on the appellant since his injuries seemed to be the worst.
Lawley had to crawl in the passenger window to assist the appellant. The appellant had multiple head injuries and a severely injured leg. A cervical collar was placed on the appellant.
Lawley testified that the appellant had alcohol on his breath. He was combative during the time Lawley was treating him. Lawley stated the appellant’s behavior was consistent with that of a drunk person. Lawley did not smell alcohol in the Hogue vehicle.
William Crumpton, Lawley’s partner that night, also testified that the appellant’s truck smelled like alcohol. He stated that he did not smell alcohol in the Hogue truck. The appellant was uncooperative with Law-ley. Crumpton said he believed the appellant was drunk that night.
Crumpton assisted in extricating the Ho-gues from their truck. He also accompanied them to the hospital.
DeWayne Stanley, a paramedic with Hands Ambulance, went to the accident that night. He smelled alcohol on the appellant’s breath. The appellant, Doss, was belligerent. Stanley testified the appel *1158 lant’s behavior was consistent with that of an intoxicated person.
Dr. Robert Smith stated that he was a surgery resident at Bessemer Carraway Hospital on the night in question. He accompanied the appellant, Doss, from Carra-way Medical Center in a helicopter. Smith had a notation on his records that the appellant had alcohol on his breath.
James Holdridge, a Bessemer police officer, testified that he investigated the accident. He determined that, at the time of the accident, the appellant’s truck was in the wrong lane. The speed limit on that part of Morgan Road was thirty miles per hour. Holdridge asked for a blood alcohol test on the appellant but he never received one.
Pat McAbee, the appellant’s supervisor at Bristol Steel, testified that the appellant left work early on March 25, 1983, with his permission.
Inez Guy, the appellant’s aunt, stated the appellant picked her up from work at 3:40 p.m. on March 25, 1983. Guy and the appellant then went to her house. The appellant stayed about three hours. During that time, the appellant’s wife, Dean, came to Guy’s house. Guy testified that the appellant did not consume any alcohol at her house that day. She had never seen the appellant drink.
Jesse Todd testified that he and the appellant worked together at Bristol Steel. On March 25, 1983, the appellant came to Todd’s house on Morgan Road around 5:00 p.m., in his truck. The appellant’s wife also came to Todd’s house in another vehicle. Todd gave the appellant a beer. The appellant and his wife stayed for about two hours. When the appellant left, the beer he was drinking was almost full.
Todd said the appellant did not appear to be drunk that night.
Burdene Doss, the appellant’s wife, stated that she met her husband at Guy’s house around 4:30 p.m. on the day in question. She and her husband, Doss, went to the Todds’ house around 6:00 p.m. The appellant was driving his truck and she was driving her son’s car. The appellant drank a beer at the Todds’ house. They left the Todds’ house about an hour after they arrived. The appellant, Doss, did not appear to be intoxicated when he left the Todds’ house.
The appellant, Doss, testified he left his job at Bristol Steel early on March 25, 1983, because of a lack of work. After running a few errands, the appellant went to his home and stayed there until 3:00 p.m. when he left to pick up his aunt at work. On his way, he saw Todd in front of his house on Morgan Road. Todd asked the appellant and his wife to stop by his house later that afternoon.
After picking up his aunt, the appellant went to her house and remained there until approximately 6:00 p.m. He and his wife then went to the Todds’ house. While there, the appellant drank a part of one beer. The appellant, Doss, stated he did not have any other alcoholic beverages that day.
After visiting the Todds for about one hour, the appellant and his wife left for their home in separate vehicles.
As the appellant was driving down Morgan Road, he saw an oncoming vehicle in his lane. He tried to brake and avoid the collision.
The appellant admitted to receiving a DUI conviction in Hueytown. He also identified pictures of his truck, in which three beer cans could be seen.
Mrs. Steve Todd stated she is Jesse Todd’s mother. The morning after the accident, Todd told her, “I wish I had took him on home. I wish I had insisted that I take him and he leave his truck.” (R. 412)
Jesse Todd denied making the above statement to his mother.
I
The appellant contends that felony convictions obtained prior to January 1, 1980, the effective date of the Alabama Criminal Code, cannot be used to enhance punishment under § 13A-5-9, Code of Alabama 1975. Recently, the Alabama Supreme *1159 Court in Ex Parte Thompson, [Ms. 84-304, September 27,1985] (Ala.1985), decided this issue adversely to the appellant.
Certified copies of seven prior felony convictions of the appellant were introduced by the State. The appellant was represented by counsel in each of those cases. Although each of those offenses occurred prior to January 1, 1980, the appellant does not dispute the fact that each of the prior convictions would constitute felonies had they occurred after the effective date of the Criminal Code.
Therefore, the appellant was properly sentenced under the Habitual Felony Offender Act.
II
The indictment in this case alleges that:
“Herman Doss, whose name to the Grand Jury is otherwise unknown, on or about March 25, 1983 did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said Herman Doss, and did thereby cause the death of Shelia Hogue, by his operation of a motor vehicle while under the influence of intoxicating liquors, or narcotic drugs, in violation of § 13A-6-2 of the Code of Alabama, 1975, ...”
While the appellant admits that the quo modo or means of the offense is clearly set out in the indictment, he asserts that the trial court erred to reversal by failing to charge the jury on the quo modo as contained in his written requested charges numbers 2, 6, and 9.
This issue is not properly preserved for our review. The appellant did not specifically object to the trial court’s failure to give the above requested written charges nor did he give any grounds as a basis for his objection to the court’s failure to give those charges. Therefore, there is nothing for this court to review. Rule 14, Temporary Rules of Criminal Procedure, Johnson v. State, 433 So.2d 473 (Ala.Cr.App.1982); Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), affirmed, 414 So.2d 993 (Ala.1982).
The appellant contends that the record indicates that the trial court gave him “a complete exception as to the refusal of the requested charges, and the Court misled [the appellant] into not requiring grounds for the exception which was given to the [appellant].” (Appellant’s Reply Brief, p. 3.) We do not reach this same conclusion.
The pertinent portion of the transcript is set out as follows:
“THE COURT: Mr. Boyce, other than the refused requested written charges, does the defendant have any exceptions, corrections, or deletions?
“MR. BOYCE: Judge, is it necessary for me to identify on the record now each of those charges?
“THE COURT: I think it might be easier to identify them by the process of elimination. I think the only one I have as a specific given written requested charge was Number 18.
“I think most of the others were incorporated or given directly orally. If you want to let the record reflect that you object to all the others, other than 18, you can assign those grounds.
“MR. BOYCE: Yes, sir. May it please the court, with the exception of Defendant’s Requested Charge 18, which was given by the court, we will take exception to the Court’s not giving the other numbered charges as they are filed.
“And I do have one in particular, and that is the requested charge on sudden emergency.
“THE COURT: Number 13.
“MR. BOYCE: Well, I seem to have lost mine.
“THE COURT: Charge 13, Mr. Boyce. “MR. BOYCE: That is the one I specifically requested in addition to our exceptions on the other charges.
“THE COURT: I will give you an exception” (R. 487-489.) (Emphasis added.)
• Although the record does reflect that the appellant objected to the trial court’s failure to give all of his written requested *1160 instructions, it also reflects that the appellant only gave one specific objection. This objection is not the one the appellant now raises on this appeal.
From the above colloquy, it can be seen that the trial court, made it clear that if the appellant wished to object to the refusal of any written requested charges, he should assign the grounds of his objection as shown above. This was not done.
The requirement of an objection to the refusal of written requested instructions, and the grounds thereof, is not an obscure rule. This Rule is explicitly stated in Allen, supra, (and the numerous cases which have followed) and Rule 14 of the Temporary Rules of Criminal Procedure. It was not followed here, and thus there is no error for reversal on this issue.
Moreover, the means of a murder does not constitute an element of that offense. Cozart v. State, 42 Ala.App. 535, 171 So.2d 77, cert. denied, 277 Ala. 698, 171 So.2d 84 (1964); McDonald v. State, 241 Ala. 172, 1 So.2d 658 (1941); Langham v. State, 243 Ala. 564, 11 So.2d 131 (1943). Therefore, it is unnecessary to include it in the court’s charge.
The trial court instructed the jury on the elements of the offenses of murder, manslaughter, and criminally negligent homicide. The quo modo of the offense was sufficiently charged in the indictment and proved at trial.
For the reasons shown, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.