The appellant was indicted for murder and the jury returned a verdict of guilty of manslaughter. He was sentenced to ten years' imprisonment.
 I
The appellant argues that the trial court erred in not giving his requested charge on criminal negligence.
The appellant gave a videotaped statement and testified at trial. Basically, he claimed that he observed the victim and a female named Azalea engaged in an altercation near an automobile. The victim began searching through the trunk of the automobile, as Azalea fled. The appellant stated that he attempted to subdue the victim from attacking Azalea. The victim began to fight him by scratching him and hitting him with a tire tool that he had pulled from his trunk. The appellant further claimed that when he got involved the victim was already bleeding, because Azalea had stabbed him in the stomach with a steak knife. The appellant admitted that he hit the victim in the back of his head with the tire tool, causing his death. However, the appellant claims that he did not intend to kill the victim.
The record indicates that, prior to the court's giving the jury charge, the following transpired:
 "[DEFENSE COUNSEL]: But the other thing is that in criminal negligent homicide goes one thing further [sic]. If I don't expect, then I am going to be able to be — if I am lying down on the ground or if a man is coming at me and I hit him in the back of the neck, I don't expect it to kill him.
 "[THE COURT]: There is no testimony that your man was lying on the ground when he hit the victim in this case.
 "[DEFENSE COUNSEL]: I believe, Your Honor, the testimony on the tape there was that. Was that he had kicked Quinton Conner in the stomach. And Conner had dropped it and come at him again, and he picked up the tire tool when he was lying on the ground and hit Quinton Conner in the back of the head.
 "[PROSECUTOR]: He said he knocked me towards it and never said —
 "THE COURT: I don't believe the testimony is that your man was on the ground.
 "[DEFENSE COUNSEL]: Your Honor, its either he stooped over and picked it up, or he was falling down on the ground when he picked it up. The testimony either way I should argue to the jury that it's a reasonable assumption that he was falling to the ground.
 "THE COURT: Well, I will charge the jury on that if I can charge the jury that your theory is that your man was on the ground when he hit him.
 "[PROSECUTOR]: State is opposed to that. There is no evidence that this defendant was ever on the ground.
 "[DEFENSE COUNSEL]: I think if the court makes the statement if the jury finds from the evidence the defendant was on the ground when he hit him, then *Page 520 
he has the evidence of — I mean has the criminal negligence homicide if he did not intend to kill him, but merely disabled him in order to get away. He should have been aware of the risk that it would cause death and was not.
 "THE COURT: I don't think so. . . . Anyway, there is no proof of character in this case.
 "[DEFENSE COUNSEL]: Yes. Your Honor, we would like to put our objection on the record to the Court. Would the Court mind if we put our objections on the record now rather than afterward?
 "THE COURT: That's fine. You can do it right now. I will charge on circumstantial evidence.
 "[DEFENSE COUNSEL]: The Court is not going to — it's my understanding the Court is not going to charge on criminal negligence homicide?
 "THE COURT: No. He said he intentionally hit him. He just didn't intend to cause his death. Go ahead and put your objections on the record."
Thus, this issue is preserved for our review.
In Hurst v. State, 469 So.2d 720 (Ala.Cr.App. 1985), the appellant alleged that he had acted in self-defense and did not even know that the victim had been injured. This Court held that, if the victim was accidentally injured while the appellant was attempting to defend himself, "it would simply be an accident. If the defendant intentionally caused the injury, it would be self-defense, Wakefield [v.State, 447 So.2d 1325 (Ala.Cr.App. 1983)], but not criminal negligence." Id. at 722. "The requested charge on criminally negligent homicide was properly refused because there was no evidence that the defendant was acting 'negligently' as that term is defined by Alabama's Criminal Code. Alabama Code 1975, § 13A-2-2(4)." Id. at 721. "Although an accidental killing may support a conviction for negligent homicide, Ex parte Weems, 463 So.2d 170
(Ala. 1984), '[a] killing is not accidental when the act causing death is done intentionally.' Phelps v. State,435 So.2d 158, 165 (Ala.Cr.App. 1983)." Lawson v.State, 476 So.2d 116, 118 (Ala.Cr.App. 1985). "A claim of self-defense does not reduce a charge of murder or manslaughter to criminally negligent homicide." Quates v. State,439 So.2d 199, 202 (Ala.Cr.App. 1983).
"The submission to the jury of manslaughter as a lesser-included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser-included offense." Phelps v. State,435 So.2d 158, 166 (Ala.Cr.App. 1983).
"Any contention that the death was accidental 'ignores the nature of the enterprise that the defendant . . . [was] engaged in.' Sanders v. State, 16 Ala. App. 511, 513,79 So. 504 (1918)." Phelps v. State, supra, at 165. See alsoQuates v. State, supra, at 202 ("[c]ertainly, it cannot be said that the appellant failed to perceive that the deceased's death might result if he was hit on the head with a jack"; an "ordinary person would be aware that someone who is hit on the head with a heavy object, such as a jack, would sustain serious, if not fatal, injuries"). In the opinion of this court, there was no rational basis for a verdict of criminally negligent homicide.
 II
The appellant argues that he was improperly sentenced by the trial court under § 13A-5-6(a)(5), Code of Alabama
(1975), when the trial court determined that the tire tool was a deadly weapon. § 13A-5-6(a)(5) establishes a limitation for sentencing felonies, as follows:
 "(5) For a Class B or C felony in which a firearm or a deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years."
A "deadly weapon" is defined by § 13A-1-2(11) as:
 "A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; any billy, black-jack, bludgeon or metal knuckles." *Page 521 
The commentary to this section explains and expands on this definition as follows:
 "Many objects are not deadly per se and ordinarly have lawful functions and uses, but under subdivision (12) such object may constitute a 'dangerous instrument' because it was used, or attempted to be used, in a manner rendering it 'readily capable of causing death or serious physical injury.' (A stick, rock, pencil or pen is capable of producing great harm or even death if jammed in a person's eye, ear or throat.) This definition essentially states previously existing law. The mere showing of the use of a fist does not make out use of a weapon. Corcoran v. State, 18 Ala. App. 202, 89 So. 835 (1921). Normally a shoe does not constitute a deadly weapon under former § 13-1-43, but it could under given circumstances. Cozart v. State, 42 Ala. App. 535, 171 So.2d 77, cert. denied, 277 Ala. 698, 171 So.2d 84 (1964). An instrument or weapon used in inflicting injury may or may not be esteemed deadly, according to the manner of its use, and the subject on which it is used. Sylvester v. State, 72 Ala. 201
(1882). In other words, a deadly weapon is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used. Williams v. State, 251 Ala. 397, 39 So.2d 37 (1948)."
"Long before the adoption of the new criminal code on January 1, 1980, Alabama subscribed to the view that it was the use of the weapon or instrument, and not solely its nature, that determined whether or not it was esteemed deadly. Helton v.State, 372 So.2d 390 (Ala.Cr.App. 1979), and cases cited therein." Stewart v. State, 405 So.2d 402, 405
(Ala.Cr.App. 1981) (wherein human fists were allowed to be classified as deadly weapons). "A 'deadly weapon' is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used." Matthews v.State, 51 Ala. App. 417, 286 So.2d 91, 93 (1973) (wherein a file was determined to be a deadly weapon because of the manner in which it was used). See also Bailey v.State, 40 Ala. App. 95, 112 So.2d 505, 507 (1958), cert. denied, 269 Ala. 693, 112 So.2d 507 (1959) (a metal pipe was determined to be a deadly weapon under the circumstances).
The appellant in the case sub judice used a tire tool to strike the victim in the back of his head with such a force as to instantly kill him. The trial judge did not improperly determine that the tire tool could constitute a deadly weapon.
AFFIRMED.
All the Judges concur.