The appellant, Belinda Ann Kennedy, pleaded guilty to the offense of robbery in the first degree, a violation of §13A-8-41, Code of Alabama 1975. She was sentenced to 20 years' imprisonment.
The appellant's sole contention on appeal is that she should have been allowed to withdraw her guilty plea because, she argues, the trial court did not correctly advise her of the minimum sentence that she could receive by entering a guilty plea, as required by Rule 14.4(a)(1)(ii), Ala.R.Crim.P., and Boykin v. Alabama, 395 U.S. 238,89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Specifically, the appellant maintains that her plea was not knowingly and voluntarily entered because at the time she entered her guilty plea, she had not been informed of the state's intent to invoke the mandatory minimum sentencing provision of § 13A-5-6(a)(4), Code of Alabama 1975, which provides a minimum sentence of 20 years' imprisonment for a Class A felony in which a firearm or a deadly weapon is used. The attorney general has filed a motion asking this Court to remand this cause to the trial court so that the appellant can withdraw her guilty plea.
The indictment charged that the appellant committed robbery in the first degree, while armed with a deadly or dangerous weapon, specifically, a "tire tool." (C.R. 7.) Robbery in the first degree is a Class A felony, which carries a minimum sentence of 10 years' imprisonment. See § 13A-8-41(c) and §13A-5-6(a)(1), *Page 1175 
Code of Alabama 1975. However, § 13A-5-6(a)(4), Code of Alabama 1975, mandates that if a "firearm or deadly weapon was used or attempted to be used in the commission of [a Class A] felony" then the minimum sentence upon conviction of the felony is 20 years' imprisonment. This Court has held that a "tire tool" can be a deadly weapon. See, Jones v. State, 523 So.2d 518, 520
(Ala.Cr.App. 1987).
The record reflects that on June 18, 1996, the appellant executed an explanation of rights and plea of guilty form, which is commonly known as an Ireland form.[1] The information contained on the form indicated that the minimum sentence that the appellant could receive for a conviction of first-degree robbery was 10 years' imprisonment. The form also contained a provision that was to be marked in the event that the punishment would be subject to any of the enhancement provisions contained in § 13A-5-6, Code of Alabama 1975. The box beside that provision on the form was not marked.
On the same day the appellant executed the Ireland form, a guilty plea hearing was conducted. During the hearing the following transpired:
 "THE COURT: Do you know you are charged with robbery, first degree in this case, which is a Class A felony, for which you can receive not less than 10 years in the state penitentiary and not more than 99 years or life. And, in addition to that, there is a twenty, or could be up to a twenty thousand dollar fine. Do you understand that?
"THE DEFENDANT: Yes.
"THE COURT: Are there any enhancements, Mr. Amos?
"MR. AMOS [prosecution]: No, your Honor."
(R. 6.) (Emphasis added.) The guilty plea hearing continued, and the trial court accepted the appellant's guilty plea to robbery in the first degree.
Toward the end of the guilty plea hearing, after the appellant had entered her guilty plea, the following occurred:
 "MR. GREEN [defense counsel]: We request a preSentence investigation."
". . . .
 "MR. AMOS [prosecution]: Your Honor, if I may, I would request the defendant be held in custody during this period of time. This is a Class A Felony with the use of a deadly weapon or dangerous instrument. The minimum sentence in this case would be 20 years in prison and you have the victim here, an elderly lady, trying to operate a business in Henry County when they went in there and beat her with a tire tool. I think this defendant is the last of the ones involved in this case and we ask that she be held pending that.
 "MR. GREEN: We ask that she be continued on the bond she is on. . . ."
(R. 13.) (Emphasis added.) The trial court ordered that the appellant was to be held in the custody of the sheriff's department pending sentencing, and the guilty plea hearing concluded.
On August 16, 1996, the appellant, through her counsel, filed a written motion to withdraw her guilty plea. In the motion, the appellant alleged, in very general terms, that her plea had not been voluntarily entered because she did not understand the potential sentencing range that she faced when she entered the guilty plea.
On that same day, a sentencing hearing was conducted. At the beginning of the sentencing hearing, a discussion took place regarding the appellant's motion to withdraw her guilty plea, during which the following transpired:
 "THE COURT: Okay. We are here today for sentencing with respect to Mrs. Kennedy. It has been filed with the Court, a motion to withdraw the plea of guilty by Mr. Green, her attorney. Have you seen a copy of it, Mr. Amos?
"MR. AMOS [prosection]: Yes, sir.
"THE COURT: Do you have any response to it?
 "MR. AMOS:. . . . I think the motion to withdraw the plea of guilty is unfounded. I think she knew exactly what she was charged with, the range of punishment, *Page 1176 
and as a matter of fact, she had several relatives involved in this case as co-defendants. And, one of them, I believe, got youthful offender [status] over the State's objection.
". . . .
 "MR. AMOS: Your Honor, I believe the underlying problem here, I think, is the people involved in this. One got youthful offender [status] and got three years. There was another family member who was a co-defendant who had the least amount of culpability and she has 10 years. All the others got 20 or more years after their conviction and everybody [pleaded] guilty, including the defendant. That is her complaint. She is not eligible for probation, can't get probation on this. That is the whole underlying charge with her wanting to withdraw her guilty plea. She entered into the plea knowingly and it was intelligently made. The Court went through the rights with her, it was explained to her the range of punishment; it was all explained and there is no grounds to withdraw.
"THE COURT: Mr. Green, any response?
 "MR. GREEN [defense counsel]: Yes, sir. . . . It is not the probationary pleas set out as the basis of Ex parte Cobb, [Ms. 1941500, August 2, 1996] ___ So.2d ___ (Ala. 1996), clarifying the defendant's use of a deadly weapon or dangerous instrument. Mrs. Kennedy was charged in the indictment for participating in a robbery and using a dangerous instrument or deadly weapon. At the time that indictment was returned, that defense was unclear and our Supreme Court has clarified the definition of a deadly weapon or dangerous instrument is something designed to be a weapon; knife, gun, billy club, blackjack . . .
"THE COURT: Tire tool.
"MR.AMOS: Tire tool.
"THE COURT: But, not fists.
 "MR. GREEN: Absolutely not. They didn't clarify tire tool. As a matter of fact, the recitation of facts that the State provided for the purpose of this sentencing, they are unclear what was used in this robbery. Because of a discrepancy in the range of available punishment from 10 to 20 to 99 or life, Mrs. Kennedy could not be apprised of the possible range of punishment available to you, especially in light of the Cobb decision. Because the range of punishment is unclear, we ask to be allowed to withdraw the plea of guilty today and proceed to trial.[2]
 "THE COURT: The range of punishment was clear in respect to the robbery, first, charge which she pled guilty to in my Court on June 18. It was a blind plea to the robbery charge. I went through the Boykin colloquy, advised her of her rights in that colloquy, and I asked her if she also understood those rights and whether or *Page 1177 
not she was waiving those rights freely and voluntarily. As I recall, and as is my practice, I required an Ireland form submitted to this Court which contained the same information or much the same information as I went over with her. And, in the Ireland form, you signed it, she signed it, and you went over the information with her concerning the range of punishment. Is that not correct?
"THE DEFENDANT: That is correct.
 "THE COURT: With respect to your motion, it is denied. Now are we ready to go forward with sentencing?
 "MR. GREEN: Yes, sir. We ask that Mrs. Kennedy receive the minimum sentence. Again, we cite the Ex parte Cobb case and the confusion over what is a deadly weapon or dangerous instrument. This tire tool simply doesn't meet the definition with regard to deadly weapon or dangerous instrument. . . ."
(R. 18-23.) (Emphasis added.)
Toward the conclusion of the hearing, the following occurred:
 "MR. AMOS [prosecution]: Under the fact situation, 20 years would be the minimum sentence. As I said, when you take a tire tool, a baseball bat, or [a] blackjack or any instrument like that and proceed to beat somebody over the head with it, it becomes a deadly weapon or dangerous instrument.
". . . .
 "THE COURT: I sentence you to a term of imprisonment in the state penitentiary for the State of Alabama for a term of 20 years. . . ."
(R. 26-27.) (Emphasis added.)
 "Rule 14.4 [, Ala.R.Crim.P.,] sets out the requirements for the acceptance of guilty pleas. Rule 14.4(a)(1)(ii) provides:
 " '[T]he court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purpose of:
 " '(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:
" '. . . .
 " '(ii) The mandatory minimum penalty, if any, and the maximum possible penalty provided by law, including any enhanced sentencing provisions. . . . .'
"(Emphasis added [in Aaron].)
 "The Alabama Supreme Court and this Court 'have consistently held that a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea.' Ex parte Rivers, 597 So.2d 1308, 1309 (Ala. 1991). It is well settled, moreover, that 'if the appellant's sentence could be enhanced under any of the enhancement statutes, the appellant should be informed of the additional sentence he could receive under the applicable enhancement statute.' Elrod v. State, 629 So.2d 58, 59 (Ala.Cr.App. 1993), citing Rivers. Accord, White v. State, 616 So.2d 399 (Ala.Cr.App. 1993); Looney v. State, 563 So.2d 3, 4 (Ala.Cr.App. 1989); Smith v. State, 494 So.2d 182 (Ala.Cr.App. 1986)."
Aaron v. State, 673 So.2d 849, 849-50 (Ala.Crim.App. 1995). (Second emphasis added.) Henry v. State, 639 So.2d 583
(Ala.Cr.App. 1994).
From our review of the record, it is clear that the appellant was not told of the state's intent to invoke the mandatory minimum sentencing provision of § 13A-5-6(a)(4), Code of Alabama 1975, prior to entering her guilty plea. In fact, before the appellant pleaded guilty, the state indicated to the trial court that the punishment to be imposed was not subject to any enhancement provisions. Accordingly, because the appellant was not informed of the effect of the enhancement provision on her sentence prior to entering her guilty plea, her guilty plea was not knowingly and voluntarily entered. See,Rivers, 597 So.2d at 1310. Therefore, the trial court erred in denying the appellant's motion to withdraw her guilty plea. Accordingly, the judgment of the trial court is reversed.
REVERSED AND REMANDED.
All the Judges concur.
[1] See Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971).
[2] In Ex parte Cobb, [Ms. 1941500, August 2, 1996] ___ So.2d ___ (Ala. 1996), the Alabama Supreme Court issued a writ of certiorari to address the narrow question of whether a "person's fists can be 'deadly weapons' or 'dangerous instruments' under the definitions of these terms in §13A-1-2(11) and (12), Ala. Code 1975." Cobb, ___ So.2d at ___. The Court held that "the use of fists or other body parts cannot constitute the use of a 'deadly weapon' or a 'dangerous instrument' as those terms are defined in § 13A-1-2(11) and §13A-1-2(12)." Cobb, ___ So.2d at ___.
In dicta, the Court stated:
 "The definition [of a deadly weapon] states that a deadly weapon is a 'firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury.' It then lists 12 specific objects that are 'designed as weapons and are easily and readily susceptible of producing death or serious injury.' Commentary, Ala. Code 1975, 13A-1-2(11). Included in that list are various types of firearms, knives, and objects designed to deliver blunt force trauma. Applying the rule of ejusdem generis to 13A-1-2(11), we conclude that the legislature intended to include as deadly weapons only those that are similar to the listed weapons. Only objects that are 'designed, made or adapted for the purposes of inflicting death or serious physical injury' fit the definition of 'deadly weapon.' "
Cobb, ___ So.2d at ___. Apparently, the appellant relied on this language at the sentencing hearing to bolster her argument that a tire tool is not a "deadly weapon."
Despite the above dicta, we do not believe that the Court intended that its narrow ruling in Cobb — that the use of fists or other body parts cannot constitute the use of a deadly weapon or dangerous instrument — to be construed to mean that a tire tool, or other similar instrument, could never be considered a deadly weapon as that term is defined in §13A-1-2(11).
 *Page 48