Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2024-0272

_____

## Melvin Christopher Moss

### v.

## State of Alabama

## Appeal from DeKalb Circuit Court
### (CC-21-1093)

COLE, Judge.

Melvin Christopher Moss appeals from the DeKalb Circuit Court's judgment denying his motion to withdraw his guilty plea for first-degree robbery, a violation of § 13A-8-41, Ala. Code 1975. Because Moss was not properly informed of the minimum sentence he could receive for that

offense, we reverse the judgment and remand the cause to the circuit court.

Facts and Procedural History

In November 2021, Moss was indicted for the first-degree robbery of Freddy Bradford. (C. 11.) The indictment alleged that Moss committed the offense while "armed with a deadly weapon or dangerous instrument, to wit: hand gun, in violation of Section 13A-8-41 of the Code of Alabama." (C. 11.) On September 5, 2023, Moss entered an "open" or "blind" plea, pleading guilty to first-degree robbery "with no agreed sentencing recommendation by the State" in exchange for the State dismissing 13 other criminal cases that were also pending against him. (C. 27.)

Before accepting Moss's guilty plea, the circuit court engaged Moss in an extensive colloquy. The circuit court confirmed that Moss had one prior felony conviction that would be considered for sentencing purposes under the Habitual Felony Offender Act ("HFOA"), that Moss's additional 13 pending criminal cases would be dismissed in exchange for his plea, and that Moss was reserving no issue for appeal. (R. 4-5.) Moss stated that he had reviewed the "explanation of rights and plea of guilty form" with his counsel and that he had no questions about his rights. (R. 5-6.)

The circuit court informed Moss that first-degree robbery is a Class A felony and that, under the HFOA, § 13A-5-9, Ala. Code 1975, with Moss's one prior felony conviction (which Moss admitted), his range of punishment would be "not less than 15 [years] or more than 99 years or life in the state penitentiary." (C. 27; R. 6; SR. 10.) The circuit court also discussed the recommended sentencing range outlined in the sentencing standards worksheet. The circuit court concluded that Moss had "a full understanding of the plea of guilty and its consequences, that such plea was voluntarily and intelligently entered, and that there was a factual basis for such plea." (C. 27; R. 7.) The circuit court then accepted Moss's plea, adjudged Moss guilty of first-degree robbery, and dismissed the other 13 criminal charges against Moss in accordance with Moss's signed plea form. (C. 27-28; R. 7-8.)

Moss's sentencing hearing was held on October 10, 2023, and Moss was again present and represented by counsel. Inv. Nick Brown testified about the facts underlying Moss's first-degree robbery charge. According to Inv. Brown, law-enforcement officers received a call about a male, Bradford, "going door to door asking for help." (R. 16.) Inv. Brown testified that Bradford said that a man had held a gun on him while

"Moss hit him with what he believed was brass knuckles." (R. 16.) Moss was pulled over by law-enforcement officers at an intersection and, inside Moss's truck, the officers found "[a] handgun, a knife, a mask, I think a bloody glove, [and] a bloody ratchet strap that was in the bed of [Moss's] truck." (R. 15.) According to Inv. Brown,

> "[Moss] said that that afternoon, he and Jamie Arsenault, Kendra Gravitt, and Edward Winston Owen were riding around when Fredd[y] Bradford had, I think, messaged Jamie Arsenault about buying drugs. Chris called Fredd[y] a keyboard warrior, and he said he had always got on, I guess, Facebook or social media and run his mouth. So [Moss and Owen] were going to teach [Bradford] a lesson.

> "[Moss and Owen] decided to bring [Bradford] there to Arsenault's home where they set the whole thing up. [Moss and Owen] had retrieved a mask and a knife and used the gun that belonged to Kendra Gravitt. [Moss and Owen] kind of preplanned this out to take his money and keep the drugs also that he was coming to get."

(R. 18-19.) Moss also admitted to Inv. Brown that he had wrapped a shirt around Bradford's eyes using a ratchet strap, that he had struck Bradford with something akin to brass knuckles, and that he had taken Bradford into the woods and left Bradford there. (R. 19.) According to Inv. Brown, Moss and Owen "walked [Bradford] up into the woods [and] made him lay down on his stomach" while Bradford "was begging for his life." (R. 17.)

4

Moss's counsel noted that Moss had already been in jail for three years and asked the circuit court to place Moss on probation or to impose a split sentence. The circuit court, however, sentenced Moss to life imprisonment, stating that he was imposing the maximum sentence because Moss went "out with a gun, with a deadly weapon, brass knuckles, and … beat somebody up and … drag[ged] them through the woods." (R. 33.)

On October 31, 2023, Moss filed what he styled as a petition under Rule 32, Ala. R. Crim. P., stating that his counsel had been ineffective and that he did not understand "the full details of the guilty plea and all the rights [he] would be giving up [by] entering the plea of guilty." (C. 31.) On November 9, 2023, Moss, through newly appointed counsel, filed a motion to withdraw his guilty plea, stating, in part, that withdrawal was "necessary to correct a manifest injustice" because Moss did not "fully understand that he could be sentenced to serve a life sentence in this case and/or received ineffective assistance of counsel." (C. 34.)

A hearing was held on Moss's motion to withdraw his guilty plea on February 15, 2024.[1] (C. 36.) Moss testified that he and his counsel talked "about [his] sentencing range being the presentence worksheet," and so Moss assumed" that he would receive between "117 to 225" months' imprisonment or a split sentence of "24 to 60 months." (R. 39-40; 3d Supp. R. 10-11.) Moss further stated that counsel had been "confident that he could get [Moss] a 15-split-3" sentence and that his counsel told him that he would "get 99 years" if he did not plead guilty. (R. 39, 41.) Moss read his explanation-of-rights form and acknowledged that the sentence circled on his form was between "15 to 99 years or life in the state penitentiary" based on his one prior felony conviction. (R. 47; Supp. R. 10.) Moss also acknowledged that he had signed this explanation-of-rights form. In addition, Moss admitted that he understood that there was no agreement as to his specific sentence when he pleaded guilty to first-degree robbery and that his sentence was up to the circuit court. (R.

---

[1]Moss and the State filed a joint motion to extend the circuit court's time for ruling on Moss's motion to withdraw his plea until January 31, 2024, which was granted. Before that time expired, the State and Moss filed another joint motion to extend the circuit court's time for ruling on the motion to "up to and including February 29, 2024." (C. 39, R. 37, 57; 3d Supp. R. 13-15.)

47-49.) However, Moss said that he was never told by counsel or the court that he could "get a minimum of 20 years." (R. 49-50.) Moss further stated that he felt "tricked into signing" the agreement and would "rather face a jury of [his] peers." (R. 44.)

After hearing Moss's testimony, Moss's new counsel argued that Moss's plea was involuntary because Moss was neither fully nor accurately informed about his potential minimum sentence, which was 20 years, not 15 years, because the minimum sentence for the commission of a Class A felony in which a firearm or deadly weapon was used is 20 years. Thus, Moss asked the circuit court to grant his motion to withdraw his guilty plea because it was involuntary. (R. 52.) The circuit court entered a judgment denying Moss's motion on February 28, 2024. (C. 36.) This appeal follows.

Analysis

It is well settled that "'[w]hether a defendant should be allowed to withdraw a guilty plea is a matter within the discretion of the trial court, whose decision will not be disturbed on appeal absent a showing of abuse of that discretion.'" Johnson v. State, 886 So. 2d 900, 902 (Ala. Crim. App. 2003) (quoting Ex parte Blackmon, 734 So. 2d 995, 997 (Ala. 1999)).

7

It is also clear that "[t]he court shall allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." Rule 14.4(e), Ala. R. Crim. P. Moss argues on appeal, as he did below, that the circuit court abused its discretion by denying his motion to withdraw his guilty plea because he was not correctly advised of the applicable sentencing range. We agree.

It is well settled "that the circuit court must notify a defendant of the correct sentencing range when the defendant pleads guilty." Williams v. State, 155 So. 3d 326, 327 (Ala. Crim. App. 2014).

> "'"The Alabama Supreme Court and this Court 'have consistently held that a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea.' Ex parte Rivers, 597 So. 2d 1308, 1309 (Ala. 1991). It is well settled, moreover, that 'if the appellant's sentence could be enhanced under any of the enhancement statutes, the appellant should be informed of the additional sentence he could receive under the applicable enhancement statute.' Elrod v. State, 629 So. 2d 58, 59 (Ala. Crim. App. 1993), citing Rivers. Accord, White v. State, 616 So. 2d 399 (Ala. Crim. App.1993); Looney v. State, 563 So. 2d 3, 4 (Ala. Crim. App.1989); Smith v. State, 494 So. 2d 182 (Ala. Crim. App.1986)."'"

Id. at 328 (quoting Kennedy v. State, 698 So. 2d 1174, 1177 (Ala. Crim. App. 1997), quoting in turn Aaron v. State, 673 So. 2d 849, 849-50 (Ala. Crim. App. 1995)).

8

Moreover,

> "'"[t]he Alabama Supreme Court held that 'a defendant, prior to pleading guilty, must be advised of the maximum and minimum potential punishment for his crime' by the trial court in order to sustain a ruling that the defendant voluntarily entered a guilty plea. See Gordon v. State, 692 So. 2d 869 (Ala. Crim. App. 1996); Pritchett v. State, 686 So. 2d 1300 (Ala. Crim. App. 1996); Knight v. State, 55 Ala. App. 565, 317 So. 2d 532 (1975); Moore v. State, 54 Ala. App. 463, 309 So. 2d 500 (1975). This holding is supported by Boykin [v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] and Rule 14.4, Ala. R. Crim. P. The rule that the trial judge conduct a colloquy with the defendant before accepting a guilty plea ensures that a criminal defendant is adequately advised of his rights so that he may make a voluntary and intelligent decision to enter such a plea."'"

Williams, 155 So. 3d at 328 (quoting Jones v. State, 727 So. 2d 889, 891 (Ala. Crim. App. 1998), quoting in turn Heard v. State, 687 So. 2d 212, 213 (Ala. Crim. App. 1996)).

The circuit court, as well as Moss's explanation-of-rights form, informed Moss that he would be sentenced as a habitual felony offender and that the applicable sentencing range Moss faced for his first-degree-robbery charge was between 15 years' imprisonment and 99 years' or life imprisonment. However, § 13A-5-6(a)(5), Ala. Code 1975, provides that a sentence "[f]or a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony" shall

9

be "not less than 20 years." There is no indication in the record that the State waived that firearm enhancement. Indeed, the plea was an open plea with "no agreed sentencing recommendation by the State." (C. 27.) Moreover, by basing the sentence imposed upon Moss's use of "a gun, with a deadly weapon, brass knuckles" (R. 33), the circuit court expressly considered the use of a "firearm or deadly weapon" in the commission of the first-degree robbery when it sentenced Moss to the maximum sentence of life imprisonment. Thus, Moss should have been informed at his guilty-plea hearing that the minimum sentence the circuit court could impose, without consideration of the sentencing guidelines, for his first-degree-robbery charge was 20 years' imprisonment. Moss, however, was incorrectly informed at the hearing, and by the explanation-of-rights form, that the minimum sentence that could be imposed was 15 years' imprisonment. (R. 6; Supp. R. 10.) In sum, although the maximum sentence was correctly explained to Moss, he was not correctly informed of the minimum sentence that could be imposed under the sentencing enhancement in § 13A-5-6(a)(5).

"This Court has held that the imposition of the firearm enhancement in § 13A-5-6(a)(4) [now codified as § 13A-5-6(a)(5)] is mandatory." Williams, 155 So. 3d at 329.

> "Although our supreme court has recognized an exception to this rule when the State elects to forgo the application of mandatory fines and other enhancements by way of a plea agreement with a defendant, see Ex parte Johnson, 669 So. 2d 205 (Ala. 1995), the record on appeal indicates that no such plea agreement existed between the State and [Moss] in this case and that the imposition of the mandatory firearm enhancement had not been waived."

Id. Moreover, the enhancement provision in § 13A-5-6(a)(5) "does not differentiate between principals and accessories." Hammond v. State, 497 So. 2d 558, 566 (Ala. Crim. App. 1986). Moss was subject to the enhancement regardless of whether he used the firearm himself during the robbery because Moss pleaded guilty to a first-degree robbery in which a firearm was used. See § 13A-2-23, Ala. Code 1975 ("A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense … [h]e aids or abets such other person in committing the offense."), and Biggs v. State, 331 So. 2d 763, 764 (Ala. Crim. App. 1976) ("It is well established that a person present, aiding and abetting another in the commission [of a crime], is guilty as a principal and punishable

11

equally with the perpetrator of the crime." (emphasis added)). See also Case v. State, 230 So. 3d 1159, 1163 (Ala. Crim. App. 2016) (plurality opinion) (reversing the judgment and remanding the cause for "the circuit court to grant Case's petition and allow him to withdraw his guilty plea and proceed to trial" because Case was not informed that the minimum sentence he could receive was 20 years' imprisonment based on the firearm enhancement; the record indicated that Case may have remained in the vehicle "while his accomplices completed the crime … in which a firearm was used to kill the victim").

Although neither party argued on appeal how the voluntary sentencing standards could affect the voluntariness of Moss's guilty plea, the circuit court did notify Moss of the possible applicability of the sentencing standards. The circuit court informed Moss that his first-degree-robbery charge was also "subject to the recommended sentencing guidelines" and that any sentence imposed pursuant to those guidelines would be a "prison sentence … recommended to be 117 months to 255 months on a straight sentence and/or 24 to 60 on a split." (R. 6.) Yet, the minimum guideline sentence provided to Moss by the circuit court was also incorrect. Although the guidelines called for a sentence in the range

12

of 117 months to 255 months, "[w]hen choosing a sentence from the recommended sentence range, the sentence chosen must not be less than the statutory sentences specified in ALA. CODE § 13A-5-6(a)(1)-(4), … [and] [f]or a Class A felony, the minimum sentence imposed must be at least 120 months." See Presumptive and Voluntary Sentencing Standards 28. Because first-degree robbery is a Class A felony, the minimum sentence that Moss could have received under the voluntary sentencing standards was 120 months, not 117 months as Moss was incorrectly informed before he entered his guilty plea. Thus, Moss was informed of an incorrect minimum sentence under the voluntary sentencing standards and of an incorrect minimum sentence outside the voluntary sentencing standards for his Class A felony in which a firearm or deadly weapon was used. The sentencing standards also expressly state that the "court's obligation to advise the defendant as to the statutory range of punishment prior to accepting a guilty plea is not affected by the Standards." Id.

Accordingly, as we held in Williams, 155 So. 3d at 330, Moss's "guilty plea was involuntary because the circuit court failed to comply with Rule 14.4(a)[(1)(ii)]," Ala. R. Crim. P., which provides that a "court

shall not accept a plea of guilty without first … informing the defendant of and determining that the defendant understands … [t]he <u>mandatory minimum</u> penalty." (Emphasis added.) The circuit court thus abused its discretion by denying Moss's motion to withdraw his guilty plea because Moss was "not informed that he was subject to a mandatory minimum sentence of 20 years' imprisonment pursuant to § 13A-5-6(a)(4)." <u>Id.</u> at 329.

Conclusion

The circuit court's judgment is reversed, and this cause is remanded to the DeKalb Circuit Court so that Moss may have the opportunity to withdraw his guilty plea and either enter another plea after he has been fully apprised of the correct sentencing range, including any enhancements, or proceed to trial.

REVERSED AND REMANDED.

Windom, P.J., and Minor and Anderson, JJ., concur. Kellum, J., concurs in the result.